## ROONEY *v.* NORTH DAKOTA.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH DAKOTA.

·No. 123. Argued January 12, 1905.—Decided January 23, 1905.

By chapter 99, March 9, 1903, Laws of North Dakota, the statutes in force
  when plaintiff in error committed the crime for which he was tried, and
  when the verdict of guilty was pronounced were altered to the following
  effect: Close confinement in the penitentiary for not less than six or more
  than, nine months after judgment and before execution was substituted
  for confinement in the county jail for not less than three nor more than
  six months after judgment and before execution, and hanging within an
  inclosure at the penitentiary by the warden or his deputy was substituted
  for hanging by the sheriff in the yard of the jail of the county in which
  the conviction occurred.
*Held* that the changes looked at in the light of reason and common sense are
  to be taken as favorable to the plaintiff in error, and that a statute which
  mitigates the rigor of the law in force at the time the crime was com-
  mitted cannot be regarded as *ex post facto* with reference to that crime.
*Held* that close confinement does not necessarily mean solitary confine-
  ment and the difference in phraseology between close confinement and
  confinement is immaterial, each only meaning such custody as will insure
  the production of the criminal at the time set for execution.
*Held* that the place of punishment by death within the limits of the State
  is not of practical· consequence to the criminal.

THIS writ of error brings in question a final judgment of the
Supreme Court of the State of North Dakota, affirming the

judgment of an inferior court of that State, by which, pursuant to the verdict of a jury, the plaintiff in error, John Rooney, was sentenced to death for the crime of murder in the first degree.

The sole question upon which the plaintiff in error seeks the judgment of this court, and the only one that will be noticed, is whether the statute under which he was sentenced was *ex post facto* and therefore unconstitutional in its application to his case. His counsel agrees that the judgment must stand if the statute be constitutional.

Before as well as after the passage of the statute under which the sentence was pronounced the punishment prescribed by the State for murder in the first degree was death or imprisonment in the penitentiary for life. Rev. Codes, North Dakota, 1899, § 7068.

By the statutes in force at the time of the commission of the offense, August 26, 1902, as well as when the verdict of guilty was rendered, it was provided that when a judgment of death is rendered the judge must deliver to the sheriff of the county a warrant stating the conviction and judgment, and appointing a day on which the judgment is to be executed, "which must not be less than three months after the day in which judgment is entered, and not longer than six months thereafter," § 8305; that when there was no jail within the county, or whenever the officer having in charge any person under judgment of death deemed the jail of the county where the conviction was had insecure, unfit or unsafe for any cause, he could confine the convicted person in the jail of any other convenient county of the State, § 8320; that the judgment of death should be executed within the walls or yard of the jail of the county in which the conviction was had, or within some convenient inclosure within such county, § 8321; and that judgment of death must be executed by the sheriff of the county where the conviction was had, or by his deputy, one of whom at least must be present at the execution. Rev. Codes of North Dakota, 1899, § 8322.

The sentence of death was pronounced March 31, 1903. Prior to that date, namely, on March 9, 1903, the legislature —without changing the law prescribing death or imprisonment for life as the punishment for the crime of murder in the first degree—passed an act providing that all executions should take place at the penitentiary, and amending certain sections of the Revised Codes of 1899. By that act it was provided:

" § 1. The mode of inflicting the punishment of death shall be by hanging by the neck until the person is dead; and the warden of the North Dakota penitentiary, or in case of his death, inability or absence; the deputy warden shall be the executioner; and when any person shall be sentenced, by any court of the State having competent jurisdiction, to be hanged by the neck until dead, such punishment shall only be inflicted within the walls of the North Dakota penitentiary at Bismarck, North Dakota, within an enclosure to be prepared for that purpose under the direction of the warden of the penitentiary and the board of trustees thereof, which enclosure shall be higher than the gallows, and so constructed as to exclude public view."

" § 3. When a person is sentenced to death, all writs for the execution of the death penalty shall be directed to the sheriff by the court issuing the same, and the sheriff of the county wherein the prisoner has been convicted and sentenced, shall, within the next ten days thereafter, in as private and secure a manner as possible to be done, convey the prisoner to the North Dakota penitentiary, where the said prisoner shall be received by the warden, superintendent or keeper thereof, and securely kept in close confinement until the day designated for the execution. . . ."

" § 14. That section 8305 of the Revised Codes of 1899, relating to judgment of death, warrant to execute, be amended so as to read as follows: § 8305. When the judgment of death is rendered the judge must sign and deliver to the sheriff of the county a warrant duly attested by the clerk under the seal of the court, stating the conviction and judgment, and appointing

a day upon which the judgment is to be executed, which must not be less than six months after the day in which the judgment is entered, and not longer than nine months thereafter."

"§ 16. All acts and parts of acts in conflict with the provision of this act are hereby repealed." Laws of North Dakota, 1903, c. 99, p. 119.

By the sentence it was ordered that the accused be conveyed to the state penitentiary, "there to be kept in close confinement until October the ninth 1903," and, within an inclosure in that building to be erected for the purpose, be hung by the warden of the penitentiary, or in case of his inability to act or his absence therefrom, by the deputy warden, before the hour of sunrise on the day fixed for the execution:

Mr. B. F. Spalding, with whom Mr. Seth Newman was on the brief, for plaintiff in error:

Section 10, Art. I, U. S. Const., provides "No State . . . shall pass any . . . ex post facto law, . . ."

The punishment for murder in the first degree, where the death penalty is determined upon by the jury, under the law in force when this offense was committed, and the punishment fixed by the statute of March 9, 1903, was altered. Three months are added to the term of imprisonment before the execution. Under the former law the imprisonment before the execution, in case there was no jail in the county, in which the conviction was had, or where the jail in such county was deemed insecure, unfit or unsafe, was in another convenient county in the State. Under the latter law such imprisonment is in the penitentiary of the State, and in close confinement. Under the former law the defendant was to be executed in the county in which he was convicted, by the sheriff of such county, or his deputy. Under the latter law, the defendant is to be executed at the penitentiary of the State by the warden or his deputy. Plaintiff in error was sentenced under the statute of 1903, which is ex post facto and void.

Section 8305, Rev. Codes N. Dak., 1899, provides that the day appointed on which the judgment of death shall be exe- cuted ". . . must not be less than three months after the day in which the judgment is entered, and not longer than six months thereafter," as amended by the statute of 1903, it provides that the day appointed. on which the judgment of death shall be executed "must not be less than six months after the day in which the judgment is entered, and not longer than nine months thereafter."

If the imprisonment under the latter statute was to be in the county jail, as under the former, the statute would be *ex post facto*, because the punishment is increased by the three months'. added imprisonment. *Ex parte Mealey*, 134 U. S. 160; *People* v. *McNulty*, 28 Pac. Rep. (Cal.) 816.

Section 3 of the act of 1903 provides that persons sentenced to death shall, within ten days thereafter, be conveyed to the North Dakota penitentiary, "and securely kept in close confinement until the day designated for the execution. . . ." Imprisonment in the penitentiary as compared with imprisonment in the county jail is an increased and greater punishment. Case *supra*.

*Mr. Emerson H. Smith*, with whom *Mr. W. H. Barnett* was on the brief, for defendant in error:

The statute of 1903 is not void as *ex post facto;* it is an additional bulwark in favor of personal security. *Calder* v. *Bull*, 3 Dall. 386. For definitions of *ex post facto* laws in which *increase* of punishment is an element, see *United States* v. *Hall*, 26 Fed. Cas. 84; *S. C.*, 6 Cranch, 171; *King* v. *Missouri*, 107 U. S. 221; *Hopt* v. *Utah*, 110 U. S. 574; *In re Medley*, 134 U. S. 160; *Cummings* v. *Missouri*, 4 Wall. 277; *Ex parte Garland*, 4 Wall. 333; *State* v. *Hayes*, 140 N. Y. 484. The act is in mitigation of the death penalty any change in which, short of death itself, is considered a mitigation, and postponement of the time of its infliction is also a mitigation. *Commonwealth* v. *Gardner*, 11 Gray, 438; *Commonwealth* v. *Wyman*, 12 Cush. 239;

Cooley on Const. Lim. § 272; *In re Tyson*, 13 Colorado, 487. If any shortening of life is to the convict's disadvantage any extension of life must be considered to his advantage. *Territory* v. *Miller*, 4 Dakota, 173, 181; *State* v. *Rooney*, 95 N. W. Rep. (N. Dak.) 517.

The fact that the convict is kept in the penitentiary in close confinement instead of in the county jail does not increase the severity of the punishment. The word "close" is not necessarily synonymous with "solitary." If the statute does not require solitary imprisonment there is no presumption that the officers of the penitentiary will make the confinement solitary. *Holden* v. *State*, 137 U. S. 483.

The fact that the execution is to be at the penitentiary instead of in the county in which the conviction was had does not make the statute *ex post facto*. *In re Tyson*, 30 Colorado, 487.

Whether the change in this law works to the advantage or disadvantage of the convict, *i. e.*, which is the severer punishment, imprisonment for three months longer before hanging, under the new law, or death by hanging three months earlier, under the old law, is a question of law for the court to decide. *People* v. *Hayes*, 140 N. Y. 488, and other cases cited in 95 N. W. Rep. 518. *Hartung* v. *People*, 22 N. Y. 695, distinguished.

Mr. Justice Harlan, after making the foregoing statement, delivered the opinion of the court.

It appears from the statement of the case that the statute in force when the sentence of death was pronounced differed from those in force when the crime was committed and when the verdict was rendered, in these particulars:

1. By the later law, close confinement in the penitentiary for not less than six months and not more than nine months, after judgment and before execution, was substituted for confinement in the county jail for not less than three months nor more than six months after judgment and before execution.

2. By the later law, hanging, within an inclosure at the penitentiary by the warden or his deputy, was substituted for hanging by the sheriff within the yard of the jail of the county in which the conviction occurred.

We are of opinion that in the particulars just mentioned the statute of 1903 is not repugnant to the constitutional provision declaring that no State shall pass an *ex post facto* law. It did not create a new offense nor aggravate or increase the enormity of the crime for the commission of which the accused was convicted, nor require the infliction upon the accused of any greater or more severe punishment than was prescribed by law at the time of the commission of the offense. The changes, looked at in the light of reason and common sense and applied to the present case, are to be taken as favorable rather than as unfavorable to him. It may be sometimes difficult to say whether particular changes in the law are or are not in mitigation of the punishment for crimes previously committed. But it must be taken that there is such mitigation when by the later law there is an enlargement of the period of confinement prior to the actual execution of the criminal by hanging. The giving, by the later statute, of three months' additional time to live, after the rendition of judgment, was clearly to his advantage, for the court must assume that every rational person desires to live as long as he may. If the shortening of the time of confinement, whether in the county jail or in the penitentiary before execution, would have increased, as undoubtedly it would have increased, the punishment to the disadvantage of a criminal sentenced to be hung, the enlargement of such time must be deemed a change for his benefit. So that a statute which mitigates the rigor of the law in force at the time a crime was committed cannot be regarded as *ex post facto* with reference to that crime. *Calder* v. *Ball*, 3 Dall. 386, 391, Chase, J.; Story's Const. § 1345; Cooley's Const. Lim. *267; *Commonwealth* v. *Gardner*, 11 Gray, 438, 443; 1 Bishop's Crim. Law, § 280. Besides, the extension of the time to live, given by the later law, increased the opportunity of the ac-

cused to obtain a pardon or commutation from the Governor of the State before his execution.

Nor was the punishment, in any substantial sense, increased or made more severe by substituting close confinement in the penitentiary prior to execution for confinement in the county jail. It is contended that "close confinement" means "solitary confinement," and *Medley's Case*, 134 U. S. 160, is cited in support of the contention that the new law increased the punishment to the disadvantage of the accused. We do not think that the two phrases import the same kind of punishment. Although solitary confinement may involve close confinement, a criminal could be kept in close confinement without being subjected to solitary confinement. It cannot be supposed that any criminal would be subjected to solitary confinement when the mandate of the law was simply to keep him in close confinement.

Again, it is said that the law in force when the crime was committed only required confinement, whereas the later statute required *close* confinement. But this difference of phraseology is not material. "Confinement" and "close confinement" equally mean such custody, and only such custody, as will safely secure the production of the body of the prisoner on the day appointed for his execution.

The objection that the later law required the execution of the sentence of death to take place within the limits of the penitentiary rather than in the county jail, as provided in the previous statute, is without merit. However material the place of confinement may be in case of some crimes not involving life, the place of execution, when the punishment is death, within the limits of the State, is of no practical consequence to the criminal. On such a matter he is not entitled to be heard.

The views we have expressed are in accord with those announced by the Supreme Court of North Dakota. *State v. Rooney*, 12 N. Dak. 144, 152.

We are of opinion that the law of 1903 did not alter the

situation to the material disadvantage of the criminal, and, therefore, was not *ex post facto* when applied to his case in the particulars mentioned.

*Judgment affirmed.*