(81 South. 293)

No. 23259.

STATE v. JOHNSON et al.*

(Feb. 3, 1919.)

*(Syllabus by Editorial Staff.)*

1. CRIMINAL LAW ⇐788—TESTIMONY OF CO-DEFENDANT—INSTRUCTION.

In a joint trial of two for murder, where neither took stand as a witness, a charge, in language of Act No. 41 of 1904, § 2, that circumstances of a witness being a party accused or jointly tried would not disqualify him from testifying, but not naming codefendant, was not erroneous; Act No. 157 of 1916 repealing Act No. 41 of 1904, and containing a similar provision, not rendering charge objectionable.

2. CRIMINAL LAW ⇐1206(5) — SENTENCE — PLACE—REPEAL OF STATUTE.

Where one convicted of murder was sentenced to be hanged in state penitentiary at Baton Rouge, as provided by Act No. 61 of 1910, its subsequent repeal by ·Act No. 133 of 1918, requiring death sentences to be executed in parish where crime was committed, did not affect the sentence, as the place or time of execution are no part of the sentence, but are fixed by law and by the Governor.

3. CRIMINAL LAW ⇐1192—SENTENCE—PLACE—STATUTE.

Where one convicted of murder was sentenced, under Act No. 61 of 1910, to Le hanged in state penitentiary at Baton Rouge, which act was subsequently repealed by Act No. 133 of 1918, providing that death sentence shall be executed in parish in which crime was committed, any change in the judgment, after affirmance, might be left to district court, which might modify sentence to comply with repealing act.

Provosty and O'Niell, JJ., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; John R. Land, Judge.

---

* For opinion on application for rehearing, see 81 South. 528, post, p. 984.

Grover C. Johnson and Henry Wooley were jointly tried for murder, and Wooley was convicted without capital punishment, and Johnson was convicted on the charge and sentenced to be hanged, and he appeals. Affirmed.

Edward Barnett, of Shreveport, for appellant.

A. V. Coco, Atty. Gen., Lal C. Blanchard, Dist. Atty., of Shreveport (Foster, Looney & Wilkinson, of Shreveport, and T. W. Robertson, of New Orleans, of counsel), for the State.

SOMMERVILLE, J.    Grover C. Johnson and Henry Wooley were jointly charged and tried for murder. Johnson was found guilty as charged; Wooley was found guilty without capital punishment. Johnson has appealed.

[1] There are numerous bills of exceptions in the record, but only one has been presented in argument before the court. It embraces an objection to that portion of the charge of the judge which recites section 2, Act 41, 1904, p. 77, which is in the following words:

"That the circumstance of the witness being a party accused, or being jointly tried, shall in no wise disqualify him from testifying; that no one shall be compelled to give evidence against himself; and provided that if the person accused avails himself of this privilege, he shall be subject to all the rules that apply to other witnesses, and may be cross-examined as to all matters concerning which he gives his testimony; and provided further that his failure to testify shall not be construed for or against him, but all testimony shall be weighed and considered according to the general rules of evidence, and the trial judge shall so charge the jury."

That act had been repealed at the time of the trial.

Neither defendant had taken the stand as a witness. And defendant Johnson now objects that the trial judge unlawfully called attention, in the foregoing portion of his

charge, to the fact that Henry Wooley, the codefendant, who was being jointly tried with him, was "in no wise disqualified from testifying," which is almost the exact language of the statute quoted. He says "that the judge was not authorized to call attention to the fact that Henry Wooley, was in no wise disqualified from testifying, merely because he was being" jointly tried; and that by so doing the judge suggested the inference to the jury that either of the accused might have been called by the other to the witness stand. The judge did not call the name of either defendant in his charge, and he did not refer to either of them inferentially.

The language of the act and of the judge does not say that "either accused might have been called by the other," and the language used does not warrant such inference. The language of the act and of the judge is, "that the circumstance of the witness being a party accused, or being jointly tried, shall in no wise disqualify him from testifying," which means simply that the accused may take the witness stand on his own behalf, or, if two or more are being tried, that either one or both of them shall not be disqualified from testifying for himself or for the other, because he happens to be a party accused. In a per curiam, the trial judge says:

"The sole object of the charge was to protect the defendants against any presumption of guilt because of their failure to testify, and it is the duty of the court to charge this."

Act 157, 1916, p. 379, specially repeals "Act No. 41, approved June 25, 1904," but that does not render the charge of the judge objectionable. Act 157 provides:

"In the trial of all indictments, complaints and other proceedings against persons charged with the commission of crimes or offenses, a person so charged shall, at his own request, but not otherwise, be deemed a competent witness; and his neglect or refusal to testify shall not create any presumption against him."

144 LA.—24

The last act and the repealed act are very similar in their provisions. The contention of defendant Johnson is without merit.

[2] It is suggested to this court by defendant, at the time that judgment and sentence condemning him to be hanged in the state penitentiary at Baton Rouge, La., were pronounced, that the place of execution was fixed in Act 61, 1910, p. 107; and that since the date of sentence the act of 1910 has been repealed by Act 133, 1918, p. 227, by providing:

"That in all cases, where sentence of death shall have been pronounced upon any person in this state, said execution shall take place in the parish in which the crime was committed for which said person was convicted."

And defendant further suggests that, the act of 1918 being inconsistent with the act of 1910, it operates a legislative pardon; and he asks that the judgment and verdict be set aside, and that he be discharged.

The point is not a new one in the jurisprudence of the state. The law provides that the death penalty shall be executed by hanging, and the sentence of the court does not go beyond that provision of the law. The naming of the place or time of execution forms no part of the sentence of the court under the statutes of the state. The law fixes the place of execution, and the Governor fixes the time of execution.

In McDowell v. Couch, 6 La. Ann. 365, where a slave had been sentenced to be executed on a fixed date, and that date had been passed while the appeal was pending in this court, we say:

"Where the time fixed for the execution of a capital sentence has passed, in consequence of an appeal to the Supreme Court, the time thus fixed not being a material part of the judgment, another time may be appointed; and it is the duty of the sheriff, without any new warrant or authority, to execute the sentence as soon as the affirmance of the judgment is officially announced to him."

"It is said by Blackstone, in his commentaries,

'that the time and place of execution are by law no part of the judgment.' Volume 4, p. 404. In the case of The King v. Rogers et al., the defendants had been convicted of highway robbery, and sentenced to death. Being detained in prison awaiting their execution, they murdered the jailer, broke the jail and escaped, but were some time afterwards again arrested and imprisoned. They were brought before the Court of King's Bench by a writ of habeas corpus; but instead of being discharged, the return showing their former conviction and sentence, the court directed an issue, to ascertain the identity of some of them, which was denied; and that being found, ordered them to be executed in pursuance of the former sentence. 3 Bur. Rep. 1810. And in the case of Earl Ferrers, found guilty of murder by the House of Peers, the house subsequently propounded the following question to the judges: 'Supposing a peer, so indicted and convicted, ought by law to receive such judgment as aforesaid, and the day appointed by the judgment for execution should lapse before such execution done, whether a new time may be appointed for the execution, and by whom?' To which the judges answered in writing: 'Supposing the day appointed by the judgment for execution should lapse before such execution done (which, however, the law will not presume), we are all of opinion, that a new time may be appointed for the execution, either by the High Court of Parliament, before which such peer shall have been attainted, or by the Court of King's Bench, the Parliament not sitting; the record of the attainder being properly removed into that court.'

"There is no doubt, therefore, that the convicted slave was subject to execution, notwithstanding the day of execution appointed by the tribunal had passed.

"It is urged that another day could not be fixed for the execution of the slave in this case, because the special tribunal which tried him, being an ephemeral one, ceased to exist with its adjournment and could never be reorganized, one of its members having died during the pendency of the appeal.

"The act of 1846, creating the tribunal, did not direct it in sentencing the slave to death to fix a particular day for the execution. Although this was prudent and comformable to usage, we have seen that it was not an essential part of the sentence; and, as the appeal rendered the execution legally impossible on that day, it was the duty of the sheriff, without any new authority or warrant, to have executed the sentence as soon as the judgment was affirmed by the Supreme Court, and the affirmance thereof was officially communicated to him by the justice of the peace in whose office the original proceedings and judgment had been filed, or by his successor in office, if dead. And if the sheriff had failed to do so, the executive of the state, bound by the Constitution to see the laws faithfully executed, would no doubt have caused the legal execution of the convict."

The decision in that case was followed in the cases of State v. Oscar, 13 La. Ann. 297, and State v. Joshua, 15 La. Ann. 118, and in the case of State v. Carrierre (No. 22854 on the docket, no opinion), in which Carrierre applied for a writ of mandamus to compel the district judge to enjoin the execution of relator on the ground that Act 43, Ex. Sess. of 1917, p. 75, had changed the place of execution from within the walls of the state penitentiary to "a building now being used as a penitentiary in the city of Baton Rouge, and referred to in Act No. 61 of the Acts of the General Assembly for the year 1910, so long as said building is in possession of the general manager of the state penitentiary, by ownership, lease, consent, or other contract, express or implied, and thereafter said executions shall take place in the inclosure of a building designated for that purpose by the general manager of the state penitentiary, said building to be located on the property recently acquired from J. D. Garig by the state for penitentiary purposes in the parish of East Baton Rouge, and about two miles east of the city of Baton Rouge," and that he could not therefore be executed in the place designated in the judgment. The court refused to issue the mandamus.

[3] In the more recent case of State v. Werner and Fazende (No. 23180 on the docket, recently decided) 80 South. 596,[1] the Attorney General suggested that the place of execution had been changed by the Act of 1918 from the penitentiary at Baton Rouge to the parish in which the crime had been committed, after the appeal had been lodged in this court, and that the judgment

---

[1] Ante, p. 380.

of the court be amended so as to order the execution in accordance with the present law; and the court so ordered. This change in the judgment might have been left to the district court after the judgment in the case had been affirmed by this court, as there would have been no change in the sentence, and the modification of the judgment made by the district judge would have been simply in conformity with the act of 1918. That course was pointed out in State v. Jonas and Sam, 6 La. Ann. 695, and in State v. Joshua, 15 La. Ann. 118. See, also, 16 C. J. Nos. 3080, 3250, 3252, 3253; State v. Summers, 9 Nev. 269; Schwab v. Berggren, 143 U. S. 442, 12 Sup. Ct. 525, 36 L. Ed. 218; In re Cross, 146 U. S. 271, 13 Sup. Ct. 109, 36 L. Ed. 969.

The judgment appealed from is affirmed.

PROVOSTY and O'NIELL, JJ., dissent.