THE STATE v. JOHN BROWN, Appellant.—112 S. W. (2d) 568.

Division Two, January 26, 1938.

*Roy McKittrick,* Attorney General, *Olliver W. Nolen,* Assistant Attorney General, and *Arthur O'Keefe* for respondent.

WESTHUES, C.—John Brown, the appellant, was convicted of murder in the first degree. His punishment was fixed at death.

The facts briefly stated are these: Appellant, a negro about thirty-two years of age, entered the Irish Tavern, at 919 E. Twenty-first Street, Kansas City, Missouri, on the evening of April 7, 1936, and at the point of a gun attempted to perpetrate a robbery. There were only five people in the place at the time. Among those present was William Cavanaugh, a motorcycle patrolman, who was off duty at the time and was dressed in civilian clothes. Cavanaugh drew

54

his gun and began shooting at appellant. Appellant, when he noticed the patrolman refused to put up his hands, also began shooting. Both emptied their guns. The patrolman was taken to a hospital and died the next day as the result of the gunshot wounds inflicted by appellant. A few days later appellant was arrested at Council Groves, Kansas, and returned to Kansas City, where he was charged with the crime of having murdered Cavanaugh. At the trial, all four of the persons who were in the Irish Tavern at the time of the shooting, positively identified appellant as the man who shot Cavanaugh. In addition, appellant made a confession in which he admitted the principal facts as testified to by the four witnesses. Appellant also received gunshot wounds which were inflicted by Cavanaugh and E. W. Bothwell, an employee of the gas company, who carried a special officers commission. Bothwell was one of the parties in the tavern at the time, and identified appellant. He testified that he shot at the negro as the negro was leaving the tavern. There was other evidence corroborating the testimony of the witnesses for the State. Appellant did not introduce any evidence. He has not favored us with a brief.

Appellant's motion for new trial reads as follows:

"Thereafter, on the 29th day of May, 1936, defendant filed his motion for new trial, which was by the court overruled on the 24th day of July, 1936, which said motion is in words and figures, as follows.

" 'Comes now the defendant in the above entitled cause of action and moves the court for a New Trial in the above styled case for the following reasons, to-wit:

" '1. The verdict in the above case is contrary to the law and evidence.

" '2. The court erred in admitting illegal evidence, i. e., defendant's purported statement of the commission of the crime.

" '3. The court erred when it allowed the prosecution to read a portion of the defendant's purported statement of the confession of the commission of the crime, to the jury.' " It is self-evident that the motion for new trial did not preserve anything for our review. However, since the extreme penalty was assessed we desire to make a number of gratuitous observations. The statement of facts, as above related, discloses, beyond doubt, that appellant was guilty of murder in the first degree. No mitigating circumstances were shown. The facts justified the assessment of the death penalty. The confession of appellant was admitted in evidence after the trial court had had a hearing upon the question of whether it was voluntarily made. During this hearing, in the absence of the jury, appellant testified. While on the stand he admitted that the main facts related in the

signed confession were true. When the confession was offered in evidence appellant's counsel made the following objection:

"MR. JOHNSON: The defendant objects to the introduction of a portion of defendant's purported confession unless it is stated in its entirety and even then we object to it, but we certainly object to it being read in part after having been admitted wholly."

The court's ruling was as follows:

"THE COURT: The objection will be overruled and the defendant accorded the privilege of reading to the jury any deleted portions."

The portion of the statement omitted by the State's attorney concerned two previous convictions of appellant. It is apparent that the ruling of the court was not prejudicial to the rights of appellant. As to the admissibility of the confession, suffice to say that under appellant's own evidence the alleged confession was admissible.

We have examined the record proper and find that the information that was filed was in proper form. There was an arraignment and a plea of not guilty. A jury was duly impaneled and sworn to try the case. The verdict was free from defect. Finding no error the judgment is affirmed. The date of the execution is ordered on and for Friday, the 28th day of January, 1938. *Cooley* and *Bohling*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.

ON MOTION TO MODIFY OPINION.

PER CURIAM:—The Attorney General has filed a motion to modify the above opinion and in lieu of affirming the judgment of the trial court, which ordered that the death sentence be carried into execution by hanging, as was provided by law at the time of the sentence of the trial court, enter an order adjudging that the defendant be executed by the administration of lethal gas, as provided by an act of the Legislature of 1937. [See Laws 1937, pages 221 to 223.] Notice of the motion to modify has been served upon the attorney of record for the appellant.

It will be noted that the new act, Sections 3719, 3721 to 3725, inclusive, Article XIII, Chapter 29, Revised Statutes 1929, were repealed and seven new sections were enacted in lieu thereof. This new act repealed outright, without a saving clause, the law providing for the infliction of the death penalty by hanging. The new act substituted a new method: That death should be inflicted by the administration of lethal gas; and that such execution be carried out within the walls of the state penitentiary, under the supervision of the warden. [See Sec. 3723, Laws 1937, p. 223.]

This question has been before the courts of some of our sister states, as well as the Supreme Court of the United States. In several cases it was held that under the laws of those states a change in the method of carrying out a death sentence would not affect cases then pending. For example: The State of Connecticut, by its laws, changed the method of inflicting the death penalty by hanging to electrocution. In Simborski v. Wheeler, 183 Atl. 688, the Supreme Court of Connecticut held that a statute of that State, providing:

"The repeal of any statute defining or prescribing the punishment for any crime shall not affect any pending prosecution or any existing liability to prosecution and punishment therefor, unless expressly provided in the repealing statute that such repeal shall have that effect," acted as a saving clause, and therefore a defendant, who had been sentenced to hang before the law went into effect, could not be executed by the new method. The same ruling will be found in Washington v. Dowling, 109 So. 588, 92 Fla. 601. Neither of these cases holds, however, that the change in the law violated any substantial rights of the defendant. The decisions were based entirely upon the proposition that the law contemplated that the cases then pending should not be affected by the new act.

The Supreme Court of South Carolina in State v. Malloy, 95 S. C. 441, 78 S. E. 995, an exhaustive opinion, held that a change in the manner of inflicting the death penalty did not violate any rights of the defendant. The court said:

"A statute which merely regulates the manner, in which the execution shall be conducted, by prescribing the time and manner of the execution, and the number and character of the witnesses, is not *ex post facto*, though it applies to offenses committed before its enactment. [Holden v. Minnesota, 137 U. S. 483, 11 Sup. Ct. 143, 34 L. Ed. 734.]

" 'The objection that the later law required the execution of the sentence of death, to take place within the limits of the penitentiary, rather than in the county jail, as provided in the previous statute, is without merit. However material the place of confinement may be, in case of some crimes not involving life, the place of execution, when the punishment is death, within the limits of the State, is of no practical consequence to the criminal. *On such a matter he is not entitled to be heard.*' [Rooney v. North Dakota, 196 U. S. 319, 25 Sup. Ct. 264, 49 L. Ed. 494, 3 Ann. Cas. 76.]" (Italics ours.)

The Supreme Court of the United States in Malloy v. South Carolina, 237 U. S. 180, 59 L. Ed. 905, 35 Sup. Ct. 507, approved the ruling of the Supreme Court of that state. The court in the course of the opinion said:

"Influenced by the results in New York eleven other States have adopted the same mode for inflicting death in capital cases; and, as

is commonly known, this result is the consequence of a well-grounded belief that electrocution is less painful and more humane than hanging. [Storti v. Commonwealth, 178 Mass. 549, 553; State v. Tomassi, 75 N. J. L. 739, 747.]

"The statute under consideration did not change the penalty—death—for murder, but only the mode of producing this together with certain nonessential details in respect of surroundings. The punishment was not increased and some of the odious features incident to the old method were abated."

In Alberty v. State, 10 Okla. Cr. Rep. 616, 140 Pac. 1025, the Supreme Court of Oklahoma had the following to say, as to such a change in the law:

"We are of opinion that the provisions of Chapter 113, Laws 1913, applied to crimes committed prior to the time said act took effect, and are not repugnant to the provision of the Federal Constitution declaring that no state shall pass an *ex post facto* law. [Art. 1, Sec. 10, Const. U. S.] It did not create a new offense, nor require the infliction of a greater or more severe punishment than the law annexed to the crime when committed. *The changes effected related solely to penal administration.*" (Italics ours.)

See also Shipp v. State, 130 Tenn. 491, 492, 172 S. W. 317, l. c. 318. In the State of Arizona a constitutional amendment substituted lethal gas for execution of the death penalty in lieu of hanging. [See Hernandez v. State, 43 Ariz. 424, 429, 32 Pac. (2d) 18, l. c. 24, 25.] In Nevada a like substitution was made by the Legislature. [See State v. Gee Jon, 46 Nev. 418, 211 Pac. 678, 217 Pac. 587, 30 A. L. R. 1443.] In these cases the courts held that the substitution was made in an effort to provide a method of inflicting the death penalty in the most humane manner known to modern science.

If, therefore, the change in the law under discussion did not affect any substantial rights of the defendant, either constitutional or statutory, but was passed for the purpose of providing a more humane manner of inflicting the death penalty, why should the new statute not apply to those cases pending at the time the change went into effect. Such statutes, as the above cases disclose, are not derogatory of any right a defendant had prior to the enactment thereof. In nature they are procedural, not substantive, and operate prospectively. The changes are intended to be a benefit and not a detriment. We have in our statutory law, Sections 661, 662, Revised Statutes 1929 (7 Mo. Stat. Ann., p. 4913), which to some extent are similar to the statute of the State of Connecticut, above referred to. The effect and purpose of those sections are to preserve substantial rights existing under a statute at the date an act to reepeal such a statute takes effect. In the case under consideration no such right is affected by

58

the change in the law. As the Supreme Court of the United States said in the Malloy case, supra:

"The punishment was not increased and some of the odious features incident to the old method were abated."

The same court said in Rooney v. North Dakota, 196 U. S. 319, 49 L. Ed. 494, 25 Sup. Ct. 264, involving a number of changes in the manner of inflicting the death penalty, including a change in the location where the punishment was to be inflicted:

"However material the place of confinement may be in case of some crimes not involving life, the place of execution, when the punishment is death, within the limits of the State, is of no particular consequence to the criminal. On such a matter he is not entitled to be heard."

In Alberty v. State, supra, it was said: "The changes effected related solely to penal administration." We therefore hold that it was the intent and purpose of the Legislature of this State that the infliction of the death penalty under the laws of this State, after the taking effect of the new act, should be carried out under the method prescribed by the new act.

The question now presents itself whether this court or the trial court shall pronounce the judgment and sentence as provided for under the new act. In view of the procedure prescribed by the Legislature we deem it appropriate and proper to remand the case to the trial court for the purpose of passing sentence upon appellant.

It is, therefore, ordered and decreed that the opinion heretofore adopted by this court be modified; that the sentence to suffer death by hanging be set aside; that the conviction of appellant of murder in the first degree and the infliction of capital punishment be affirmed; that the case be remanded to the trial court and that that court, as soon as may be expedient, have the appellant brought before it for the purpose of passing a sentence in accordance with the provisions of Laws of Missouri, 1937, pages 222, 223. It is so ordered.