9 So.2d 42

**STATE ex rel. PIERRE v. JONES, Governor.**

**No. 36640.**

May 25, 1942.

Rehearing Denied June 29, 1942.

Maurice R. Woulfe and Richard A. Dowling, both of New Orleans, for appellant.

Eugene Stanley, Atty. Gen., A. M. Suthon and Niels F. Hertz, Asst. Attys. Gen., and John E. Fleury, Dist. Atty., and Ernest M. Conzelmann, Asst. Dist. Atty., both of Gretna, for appellee.

Lewis R. Graham, of New Orleans, amicus curiae.

HIGGINS, Justice.

The principal question presented here is whether or not Act 14 of 1940, the State statute, which changed retrospectively the mode or method of inflicting the death penalty in capital cases from death by "hanging" to death by "electrocution", violates the provisions of the State and

Federal Constitutions prohibiting the legislative branch of the government from enacting ex post facto laws.

The defendant was indicted on July 8, 1940, by the Grand Jury of the Parish of St. John the Baptist, this State, for the murder of Ignace Roussell, on October 20, 1936. His motions to quash the indictment and jury venire, after hearing, were overruled on July 29, 1940. The defendant pleaded not guilty and upon the trial, on August 1, 1940, the jury found him guilty as charged, an unqualified verdict, which made it mandatory that the court impose the death penalty. On August 8, 1940, his motions for a new trial and in arrest of judgment, respectively, were denied and he was sentenced by the judge of the 24th Judicial District Court for the Parish of St. John the Baptist to death "by hanging by the neck until dead." The defendant appealed and the case was argued and submitted in this Court on May 19, 1941, and on June 30, 1941, we affirmed the verdict of the jury and the sentence of the trial court. The defendant filed a petition for a rehearing on July 14, 1941, and it was refused on July 18, 1941. State v. Pierre, 198 La. 619, 3 So.2d 895. On the same day, the defendant filed an application for a stay of execution, which we granted, in order to allow him to apply to the Supreme Court of the United States for a writ of certiorari. The United States Supreme Court denied the application on November 10, 1941, and the mandate from that Court was filed here on November 22, 1941. On December 6, 1941, the decree of this Court and the mandate of the United States Supreme Court were formally placed of record in the district court by an appropriate order.

At the time the crime was committed, the law provided that the manner of inflicting the death penalty "shall be by hanging the convict by the neck until he is dead." Article 569, Code of Criminal Procedure. Before the defendant was tried, the Legislature of Louisiana, in regular session, passed Act 14 of 1940, which was approved by the Governor on July 6, 1940. This statute changed the manner of inflicting the death penalty in this State from "hanging" to "electrocution", and fixed the effective date thereof as June 1, 1941, or at such prior date thereto that the General Manager of the State Penitentiary at Angola obtained an electric chair and certified that fact to the Sheriffs of the respective parishes of the State. (The chair was obtained on August 6, 1941.) The Act repealed all laws or parts of laws in conflict with its provisions and did not contain a saving clause covering crimes committed prior to its effective date.

When the transcript of the proceedings was sent to the Governor for the purpose of having the date of execution fixed in accordance with Article 567 of the Code of Criminal Procedure, the defendant applied to the 19th Judicial District Court for the Parish of East Baton Rouge for a writ of injunction directed to Honorable Sam Houston Jones, Governor of this State, "* * * prohibiting, restraining and enjoining him from signing, issuing, publishing or ordering executed any death warrant for your relator, * * *." He

alleged that the judgment and sentence of the 24th Judicial District Court for the Parish of St. John the Baptist was illegal, unconstitutional, null and void, and was coram non judice, because the Legislature had passed Act 14 of 1940, which superseded and repealed Articles 569 and 570 of the Code of Criminal Procedure, providing for the manner or method of executing the death penalty "by hanging the convict by the neck until he is dead"; that the 24th Judicial District Court was without jurisdiction on August 8, 1940, to sentence the relator to death either by hanging or by electrocution, since Act 14 of 1940 repealed Article 569 of the Code of Criminal Procedure, which provided that the means of inflicting the death penalty was by hanging and did not contain a saving clause; that Act 14 of 1940 was inapplicable as the alleged offense was committed prior to its passage; that Act 14 of 1940 is unconstitutional if construed to have retrospective effect, as that would make it an ex post facto law under Article IV, § 15 of the Constitution of Louisiana of 1921 and Article I, § 10 of the Federal Constitution; that, therefore, the relator has been granted, in legal effect, a legislative pardon, and should be discharged; and that these issues were not in the case when it was presented to and considered by this Court on defendant's former appeal.

The State filed exceptions of no right and no cause of action, and denied that the relator was entitled to a writ of injunction. After a trial on the merits the district judge sustained the exceptions of no right and no cause of action, and dismissed his suit. The relator appealed.

The State contends that the district judge properly maintained its exceptions on the grounds that the penalty for the crime of murder has always been and still is death and that the only change made by Act 14 of 1940 is the method or mode of executing the sentence, and as electrocution is recognized as a more humane and less painful manner or means of carrying out the death penalty than by hanging, the Legislature had the constitutional right to make the Act retrospective without thereby making it an ex post facto law.

Article 1044 of the Code of Criminal Procedure provides that "* * * whoever shall commit the crime of wilful murder * * * shall suffer death." R.S. § 784.

Article 569 of the Code of Criminal Procedure provides that the "* * * execution shall be by hanging the convict by the neck until he is dead." R.S. § 983.

■ The pertinent part of Act 14 of 1940 reads:

"To amend and re-enact Sections 569 and 570 of the Louisiana Code of Criminal Procedure, *relative to the method of inflicting the sentence of death,* and providing for the date that this Act shall become effective.

"Section 1. Be it enacted by the Legislature of Louisiana, That Section[s] 569 and 570 of the Louisiana Code of Criminal Procedure be and the same are hereby

amended and re-enacted so as to read as follows:

"Article 569. Every sentence of death imposed in this State shall be by electrocution; that is, causing to pass through the body of the person convicted a current of electricity of sufficient intensity to cause death, and the application and continuance of such current through the body of the person convicted until such person is dead. * * *" (Italics ours.)

Section 2 of the Act sets forth the date when it shall go into effect and Section 3 thereof repeals all laws or parts of laws in conflict therewith.

It is clear from a reading of the provisions of Act 14 of 1940, that the Legislature intended that from the date this statute became effective, the mode of inflicting the death penalty by hanging should be superseded by the method of electrocution, even as to those persons who were then under a death sentence for prior offenses. The State concedes that this is a proper construction of the statute and the defendant's attorneys do not in any way point out that such an interpretation is erroneous. In fact, the defendant, in connection with the point that the statute is an ex post facto law, argues that it is retrospective in its effect.

The leading case on the primary issue herein is Malloy v. State of South Carolina, 1915, 237 U.S. 180, 35 S.Ct. 507, 59 L. Ed. 905, where the defendant was indicted by the Grand Jury of Marlbor County, South Carolina, for the murder of one Moore, on November 24, 1910. During the summer term (1912) of the Court of General Sessions of that County, he was tried and found guilty by the jury without a recommendation of mercy. He was sentenced to death by electrocution under an Act of the Legislature approved February 17, 1912. The Supreme Court of the State affirmed the judgment (95 S.C. 441, 78 S.E. 995, Ann.Cas.1915C, 1053) and the United States Supreme Court considered the case on a writ of error, applied for on the ground that the enactment of 1912 changed materially the punishment for murder and as to the defendant's prior committed offense, is, therefore, ex post facto in contravention of Article 1, § 10 of the Federal Constitution. In affirming the judgment, the Court said [237 U.S. 180, 35 S.Ct. 508, 59 L.Ed. 905]:

"Under the South Carolina laws effective when the crime was committed the punishment for one found guilty of murder without recommendation to mercy was death by hanging within the county jail, or its inclosure, in the presence of specified witnesses. The subsequent act prescribed electrocution as the method of producing death instead of hanging, fixed the place therefor within the penitentiary, and permitted the presence of more invited witnesses than had theretofore been allowed.

"In response to the meticulous objection based upon change of place for execution and increased number of witnesses it suffices to refer to what this court said through Mr. Justice Harlan in Holden v. Minnesota, 137 U.S. 483, 491, 11 S.Ct. 143, 34 L.Ed. 734, 736, and Rooney v. North Dakota, 196 U.S. 319, 325, 326, 25 S.Ct.

264, 49 L.Ed. 494, 496, 497, 3 Ann.Cas. 76. The constitutional inhibition of ex post facto laws was intended to secure substantial personal rights against arbitrary and oppressive legislative action, and not to obstruct mere alteration in conditions deemed necessary for the orderly infliction of humane punishment.

"The contention in behalf of plaintiff in error most earnestly relied on is this: Any statute enacted subsequent to the commission of a crime which undertakes to change the punishment therefor is ex post facto and unconstitutional unless it distinctly modifies the severity of the former penalty. 'The courts cannot and will not undertake to say whether or not a change from hanging to electrocution is an increase or mitigation of punishment;' and therefore the act of 1912 cannot apply in the circumstances presented here. Hartung v. People, 22 N.Y. 95.

"The often-quoted opinion of Mr. Justice Chase in Calder v. Bull, 3 Dall. 386, 390, 391, 1 L.Ed. 648, 650, summarizes ex post facto laws within the intendment of the Constitution thus: '1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission

of the offense, in order to convict the offender. All these, and similar laws, are manifestly unjust and oppressive.' Further expounding the subject, he adds: 'But I do not consider any law ex post facto, within the prohibition, that mollifies the rigor of the criminal law; but only those that create, or aggravate, the crime; or increase the punishment, or change the rules of evidence, for the purpose of conviction.' And to the general doctrine thus announced this court has continued to adhere.

"In Mallet v. [State of] North Carolina, 181 U.S. 589, 597, 21 S.Ct. 730, 45 L.Ed. 1015, 1019, 15 Am.Crim.Rep. 241, Mr. Justice Shiras, speaking for the court, after reviewing former opinions, applied the established principles and concluded that the impeached legislation was not ex post facto, since it 'did not make that a criminal act which was innocent when done; did not aggravate an offense or change the punishment and make it greater than when it was committed; did not alter the rules of evidence, and require less or different evidence than the law required at the time of the commission of the offense; and did not deprive the accused of any substantial right or immunity possessed by them at the time of the commission of the offense charged.'

"Considering the above-stated settled doctrine and well-known facts of which judicial notice is taken, we think the validity of the impeached act is clear.

"Impressed with the serious objection to executions by hanging, and hopeful that means might be found for taking life 'in a less barbarous manner,' the governor of

New York brought the subject to the attention of the legislature in 1885. A commission thereafter appointed to ascertain the most humane and practical method of inflicting the death sentence reported in favor of electrocution. This was adopted by the statute of 1888, and, with the approval of the courts, has been in continuous use since that time. In re Kemmler, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519; [People ex rel. Kemmler v.'Durston], 119 N.Y. 569, 24 N.E. 6, 7 L.R.A. 715, 16 Am.St.Rep. 859.

"Influenced by the results in New York, eleven other states have adopted the same mode for inflicting death in capital cases; and, as is commonly known, this result is the consequent of a well grounded belief that electrocution is less painful and more humane than hanging. Storti v. Com., 178 Mass. 549, 553, 60 N.E. 210, 52 L.R.A. 520; State v. Tomassi, 75 N.J.L. 739, 747, 69 A. 214.

"The statute under consideration did not change the penalty—death—for murder, but only the mode of producing this, together with certain nonessential details in respect of surroundings. The punishment was not increased, and some of the odious features incident to the old method were abated.

"In Hartung v. People, supra, the court had under consideration and condemned an act of the legislature which made a distinct addition to the penalty prescribed when the crime was committed; and the conclusion therein is not properly applicable in the circumstances of the present cause, where there has been no such change."

Other authorities sustaining statutory changes not of a substantial nature despite

attacks on their constitutionality predicated upon alleged ex post facto violations are: Hopt v. Utah, 110 U.S. 574, 575, 4 S.Ct. 202, 28 L.Ed. 262, 263, 4 Am.Crim.Rep. 417; Thompson v. Missouri, 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204; Gut v. Minnesota, 9 Wall. 35, 19 L.Ed. 573; Duncan v. Missouri, 152 U.S. 377, 382, 14 S.Ct. 570, 38 L.Ed. 485; Gibson v. Mississippi, 162 U.S. 565, 590, 16 S.Ct. 904, 40 L.Ed. 1075, 1081. See, also, Volume 11, American Jurisprudence, 1181, pars. 353, 1183–84, par. 355–56, and Volume 15, American Jurisprudence, 165, par. 516.

In the case of Woo Dak San v. State, 1931, 36 N.M. 53, 7 P.2d 940, the accused was convicted of murder in the first degree and sentenced to death by hanging, which was the method in force under the law at the time. While the case was pending on appeal, the Legislature abolished this mode of execution and adopted the statute substituting electrocution instead of hanging. The defendant contended that as the Legislature had repealed the statute providing for "death by hanging" and substituted "death by electrocution", he should be discharged, because the law under which he was sentenced had been repealed and it was impossible to carry out the judgment of the court without a saving clause in the repealing statute. It was suggested that the defendant could not be electrocuted because the law could not have retrospective effect without being made unconstitutional by the ex post facto provision of the Federal Constitution. In refusing to set aside the sentence, the Court cited the Malloy case, supra, holding that the penalty for murder in the first degree remained as it was "death" and that the change related only to a more humane

and less painful method of execution and the unsubstantial attending circumstances of inflicting it, and therefore, the statute was not an ex post facto law.

The decision of the United States Supreme Court in the Malloy case supra was cited and followed by the Supreme Court of Arizona in Hernandez v. State, 1934, 43 Ariz. 424, 32 P.2d 18, 25, where the Hernandez brothers were sentenced to death by hanging, after they were found guilty of murder in the first degree, which crime was committed on January 21, 1933, or at a time when paragraph 5129 of the State Revised Code of 1928 provided that " * * * the punishment of death must be inflicted by hanging." On October 28, 1933, Article 22 of the Constitution of Arizona was amended to read as follows: "§ 22. The judgment of death shall be inflicted by administering lethal gas. The execution shall take place within the limits of the state prison." The defendants contended, on appeal, first, that even if the Court should affirm the judgment imposing the sentences of death to be inflicted by hanging, these sentences could not be carried out because the constitutional amendment had abolished hanging as a method of execution, and, second, that the amendment prescribing lethal gas as a means of executing the death sentences violated the provisions of the Federal and State Constitutions prohibiting the passage of ex post facto laws. The Court held that the amendment was not an ex post facto law because it did not change the death penalty but merely provided a different and more humane and less painful method of inflicting that penalty, and refused to set aside the sentence and

release the accused. The judgment was affirmed in both cases.

The doctrine of Malloy v. State of South Carolina, supra, was adopted by the Supreme Court of Missouri in the case of State v. Brown, 1938, 342 Mo. 53, 112 S.W.2d 568.

In the case of State v. Johnson, 144 La. 735, 81 So. 293, the defendant was convicted of murder as charged, and sentenced to be hanged in the State Penitentiary. Before he was executed, the Legislature passed an Act which changed the place of execution from the State Penitentiary to the Parish Prison in the Parish where the crime had been committed, and repealed the former law. In deciding the case adverse to the accused, it was held:

"Where one convicted of murder was sentenced, under Act No. 61 of 1910, 'to be hanged in state penitentiary at Baton Rouge, which act was subsequently repealed by Act No. 133 of 1918, providing that death sentence shall be executed in parish in which crime was committed, any change in the judgment, after affirmance, might be left to district court, which might modify sentence to comply with repealing act." (Syllabus)

In the case of Rooney v. State of North Dakota, 196 U.S. 319, 25 S.Ct. 264, 49 L.Ed. 494, 3 Ann.Cas. 76, it was held that the right of an accused to be executed at a specified place was not a substantial personal right and, therefore, one that could be affected by legislation subsequent to the conviction, without violating the inhibition of the constitutional guarantee against ex post facto laws. See, also, Holden v. Minnesota, 137 U.S. 483, 11 S.Ct. 143, 34 L.Ed. 734, and

Chatfield v. Ohio, 1925, 269 U.S. 167, 46 S. Ct. 68, 70 L.Ed. 216, 217.

■ In the light of the foregoing authorities, it is our opinion that Act 14 of 1940 does not change the punishment in capital ·cases, the infliction of the death penalty. It merely provides a different method or mode of executing that penalty by substituting "electrocution" for "hanging", and, as the infliction of death by electrocution is more humane and less painful than by hanging, the retrospective effect of the statute, i. e., its provisions being applicable to crimes committed prior to its effective date, does not make it an ex post facto law within the meaning of the provisions of Article IV, § 15 of the Constitution of Louisiana of 1921 and Article I, § 10 of the Constitution of the United States.

The defendant's attorneys have referred us to authorities which hold that where a ·crime has been committed or where a criminal prosecution is pending, even on appeal, and the Legislature thereafter repeals completely the statute on which the charge is founded, the accused must be discharged. They also cite cases holding that where a crime has been committed or a criminal prosecution therefor is pending and the Legislature amends and re-enacts the law and changes the penalty thereof to make it more odious or more severe, the amending and repealing statute, as to such offenses and parties, is ex post facto, and in the absence of a saving clause therein providing that the defendant shall be punished under the prior law, the defendant is entitled to relief. United States v. Chambers, 291 U.S. 217–226, 54

S.Ct. 434, 78 L.Ed. 763, 89 A.L.R. 1510; State v. Whitbeck et al., 136 La. 896, 67 So. 949; State v. Thomas, 149 La. 654, 89 So. 887; Cassard v. Tracy, 52 La.Ann. 835, 27 So. 368, 49 L.R.A. 272; State v. Jones et al., 127 La. 768, 769, 53 So. 985; State v. Guillory, 127 La. 951, 953, 54 So. 297; C.J. Vol. 16, page 71. There are many cases to that effect but they are not applicable here, because Article 1044 of the Code of Criminal Procedure fixing the penalty of death for murder was not repealed or changed either expressly or impliedly by Act 14 of 1940. This statute amended and re-enacted Article 569 of the Code of Criminal Procedure, which provided only for the method of carrying out the death penalty.

■ The point made by the defendant that the failure of the Legislature to include in Act 14 of 1940 a saving clause must necessarily free the accused is without merit, because we have already demonstrated that the statute does not affect any substantial right of the accused adversely, that it is purely procedural, affecting only penal administration by substituting the method of inflicting death by electrocution in lieu of the mode of inflicting death by hanging in capital cases and, therefore, it is not an ex post facto law. The only effect that a saving clause would have, if one had been placed in the Act, would be to preserve and save the old procedure of·execution by hanging, which the defendant then could have insisted upon being carried out by virtue of the terms of the statute itself. Washington v. Dowling, 1926, 92 Fla. 601, 109 So. 588, and in Ex parte Browne, 1927, 93 Fla. 332, 111 So. 518.

From what we have said it is clear that the defendant cannot be executed by hanging as the law which authorized that method of carrying out the death penalty has been repealed by the Legislature without a saving clause in the statute. He is not entitled to be discharged because he stands validly convicted and sentenced to death and cannot legally complain of the death penalty being inflicted by means of electrocution under a constitutional statute providing for that method or mode of execution.

Having reached the conclusion that Act 14, of 1940 is applicable and constitutional and that its provisions do not deprive the relator of any substantial right and that he stands condemned under a valid conviction and sentence of death, the question arises as to whether or not that provision in the sentence providing for the mode of inflicting the penalty by hanging may be treated as surplusage and, by operation of law, the new method of carrying out the penalty by electrocution may be substituted in its place without the necessity of this Court amending the sentence in that respect or remanding the case to the district court to have the sentence amended so as to conform with the new law, Act 14 of 1940.

In the cases of Woo Dak San v. State and Hernandez v. State, supra, where the defendants had been sentenced to death by hanging under the law, but before the executions could take place, legislation was passed which changed the mode of inflicting the death penalty from hanging to electrocution and lethal gas, respectively, the Court apparently considered that by mere operation of law the new method of execution was the legal way to carry out the penalty without amending the sentences, because, in the former case it directed execution of the sentence pronounced and in the latter, on appeal, it simply affirmed the judgments.

In State v. Johnson, supra, the accused was sentenced to death after having been found guilty as charged. At that time, the law required the execution to take place in the State Penitentiary. Subsequently, this law was repealed by a statute requiring the sentence to be carried out in the Parish where the crime had been committed. The defendant contended that the new statute operated as a legislative pardon and asked that the judgment and verdict be set aside and that he be discharged. The Court concluded that the naming of the place or time of execution formed no part of the sentence of the court under the statutes of the State and that the law fixed the place of execution and the Governor fixed the time thereof. As to the Attorney General's suggestion that the judgment of the Court should be amended to conform with the new law, the Court stated:

"In the more recent case of State v. Werner and Fazende (No. 23180 on the docket, recently decided) [144 La. 380], 80 So. 596, [6 A.L.R. 1601], the Attorney General suggested that the place of execution had been changed by the Act of 1918 from the penitentiary at Baton Rouge to the parish in which the crime had been committed, after the appeal had been lodged in this court, and that the judgment of the court be amended so as to order the execution in accordance with the present law;

and the court so ordered. This change in the judgment might have been left to the district court after the judgment in the case had been affirmed by this court, as there would have been no change in the sentence, and the modification of the judgment made by the district judge would have been simply in conformity with the act of 1918. That course was pointed out in State v. Jonas and Sam, 6 La.Ann. 695, and in State v. Joshua, 15 La.Ann. 118. See, also, 16 C.J. Nos. 3080, 3250, 3252, 3253; State v. Summers, 9 Nev. 269; Schwab v. Berggren, 143 U.S. 442, 12 S.Ct. 525, 36 L.Ed. 218; In re Cross, 146 U.S. 271, 13 S.Ct. 109, 36 L.Ed. 969.

"The judgment appealed from is affirmed."

It will be noted that the Court neither amended the judgment nor remanded the case to the district court for the purpose of having the sentence corrected so as to state that the execution take place in the parish where the crime was committed, under the new law, instead of the State Penitentiary, under the former statute, but left the amendment to be made by the district court.

In State v. Brown, supra, the defendant was convicted of murder in the first degree and sentenced to death by hanging, as provided by the law in effect at that time. Subsequently, the Legislature passed a statute, which repealed outright, without a saving clause, the law providing for the infliction of the death penalty by hanging. The new act substituted the method of the execution by the administration of lethal gas. The Attorney-General filed a motion to have the sentence amended to conform with the new law. The Court followed the rule of the Malloy case and other authorities therein cited and concluded that as the defendant was not affected in any of his substantial constitutional or statutory rights and as the change was purely procedural, relating solely to penal administration, there was no reason why the new law should not apply to cases pending at the time the change went into effect. The Court then considered the question of whether or not it should impose the sentence in accordance with the new law or remand the case to the district court for that purpose and concluded by affirming the conviction of the appellant of murder in the first degree and the infliction of capital punishment and set aside the sentence to suffer death by hanging, and remanded the case to the trial court to have the sentence imposed in accordance with the provisions of the new law.

In Ex parte Browne, 1927, 93 Fla. 332, 111 So. 518, 519, the accused was indicted on November 23, 1923, for murder alleged to have been committed on October 1, 1923. The judgment was affirmed on appeal. The defendant was sentenced to death by electrocution. Prior to January 1, 1924, the statutory death penalty was inflicted by hanging. After January 1, 1924, death by hanging as a means of punishment for crime was abolished and electrocution, or death by electricity, was substituted therefor, with appropriate regulations. Section 32 of Article 3 of the Constitution of Florida contained a general saving clause making the repeal or amendment by sub-

sequent legislation of a pre-existing criminal statute ineffective either as a repeal or an amendment of such criminal statute insofar as offenses that had been committed prior to such repealing or amending law were concerned. The Court concluded that due to the saving clause the sentence imposed under the law should have been death by hanging and, therefore, the judgment and sentence authorizing death by electrocution was unauthorized. The Court also noted that this particular question had not been presented when the judgment had been previously affirmed on appeal. In ordering the case remanded to the trial court for a proper sentence under the conviction of murder in the first degree, the Court stated:

"Where a person is held under a commitment issued on an unauthorized or invalid judgment and sentence, the legality of the detention in custody may be tested in habeas corpus proceedings, and if the judgment is found to be illegal the petitioner may be remanded for a proper sentence, there being no illegality in the proceedings prior to the judgment and sentence. [Authorities cited.]

"The sentence should have been death by hanging, as provided by the statutes as of October, 1923, when the crime was committed, and not by electrocution under the statute that became effective January 1, 1924." (Brackets ours.)

In McAdams v. State, 1927, 216 Ala. 659, 114 So. 39, 40, the defendant was convicted of murder in the first degree, with the penalty of death, and the court, on November 24, 1926, sentenced him to be hanged on December 31, 1926. He appealed and the court found that there were no errors committed during the trial. It appears that subsequent to the sentence the penalty of death in capital cases was changed from hanging to electrocution. In affirming the judgment, the Court said:

"The mode of execution having been changed from hanging to electrocution since the defendant was convicted and sentenced, it is ordered that the circuit court forthwith bring the defendant before it for resentence according to the provisions of the existing law."

In the case of State ex rel. Cutrer v. Pitcher, General Manager of the State Penitentiary, 164 La. 1051, 115 So. 187, 188, the accused entered a plea of guilty of manslaughter to an indictment charging him with murder and was sentenced by the 20th Judicial District Court, West Feliciana Parish, to the State Penitentiary, for a term not less than 10 or more than 12 years. After serving more than 5 months of his term, he instituted habeas corpus proceedings in the district court in East Baton Rouge Parish, on the ground that the indeterminate sentence imposed upon him was illegal because the minimum term exceeded two-thirds of the maximum, and was, therefore, violative of Act 222 of 1926. He prayed to be released from custody. After hearing the case the 19th Judicial District Court for East Baton Rouge Parish recalled the writ and dismissed the suit. The defendant then applied to this Court for writs of certiorari and mandamus. After concluding that the

sentence was illegal in the respects complained of, this Court held:

"There is no authority that we know of for the proposition that, when a sentence which is void, as being in violation of a statute, has been partially executed, the judge who made the mistake of imposing the void sentence has lost his authority to impose a valid sentence. * * *

"The relator in this case had the right to appeal from the illegal sentence, notwithstanding he had entered a plea of guilty of the crime of manslaughter, and, if he had appealed, we would have set aside the sentence and remanded the case, as we did in State v. Blakeney, [164 La. 669, 114 So. 588], for the judge to sentence the defendant according to the provisions of Act 222 of 1926; but there is no principle on which we could maintain that, by serving a few months of the void sentence, instead of appealing from it, the prisoner obtained immunity from being sentenced according to law.

"Our conclusion is that the relator is entitled to be released from his imprisonment in the penitentiary under the illegal sentence, but that he is yet subject to imprisonment under a valid sentence by the Twentieth district court in and for the parish of West Feliciana.

"It is ordered that the respondent, general manager of the state penitentiary, deliver the prisoner, Ike Cutrer, to the sheriff of the parish of West Feliciana, to be brought before the Twentieth district court for that parish, and sentenced according to law on his conviction for the crime of manslaughter."

In the case of State v. Carson, 160 La. 1, 106 So. 653, the Court, after finding that the sentence imposed upon defendant was beyond that authorized by the statute, remanded the case to the trial court, in order that he might be sentenced according to law.

The same procedure of remanding the case to the trial court to have the proper sentence imposed was followed by us in the case of State v. O'Day, 191 La. 380, 185 So. 290.

In the instant case, the accused was sentenced to death and the mode of inflicting the penalty was by hanging, in accordance with the law as it existed at that time. While the case was pending, the State statute changing the method of execution to electrocution became effective. As this new law had retrospective effect, execution by hanging as stated in the sentence did not conform to the new method of inflicting the death penalty. The verdict of the jury finding the defendant guilty as charged, an unqualified verdict, as well as the sentence imposing the death penalty, were held to be valid by this Court, and the Supreme Court of the United States refused to review the case. Executing the present valid death sentence by hanging the defendant is not in conformity with the new law requiring the infliction of the death penalty by electrocution. As the manner of executing the death penalty by electrocution is more humane and does not affect any substantive or substantial right of the defendant, he cannot complain of the sentence being amended so as to

833

conform with the provisions of Act 14 of 1940.

It is unnecessary for us to decide whether or not this Court has the authority to make the amendment to the judgment. Suffice it to say that where the sentences imposed by the district courts were not in accordance with the law, the cases were remanded to the trial court, in order that the sentences be amended to conform with the provisions of the applicable statute.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the 19th Judicial District Court for the Parish of East Baton Rouge appealed from is affirmed and it is further ordered that the relator, Hugh Pierre, shall be taken before the 24th Judicial District Court in and for the Parish of St. John the Baptist, in order that the sentence against the said Hugh Pierre shall be amended so as to comply with the provisions of Act 14 of 1940.