ABE WASHINGTON, *Plaintiff in Error* v. W. H. DOWLING, AS SHERIFF OF DUVAL COUNTY, FLORIDA, *Defendant in Error*.

## En Banc.

## Opinion filed August 11, 1926.

1. Criminal statutes are those Acts of the Legislature, as an organized body, defining crime, treating of its nature or providing for its punishment, and included within the meaning of the term are those Acts of such body dealing in any way with crime or its punishment.

2. Statute prescribing the means by which the penalty of death is to be inflicted, is a Legislative enactment dealing with punishment for crime and is a "criminal Statute" within the meaning of Section 32, Article III, of the Constitution of Florida.

3. Section 32, Article III, of the Constitution of Florida, providing that "The repeal or amendment of any criminal statute shall not affect the prosecution or punishment of any crime committed before such repeal or amendment," continues in effect a statute prescribing that the penalty of death shall be inflicted by hanging, when subsequent to a valid sentence imposing such penalty by such means, and pending an appeal, the means by which such punishment is to be inflicted is changed by statute to electrocution.

A Writ of Error to the Circuit Court for Duval County; George Couper Gibbs, Judge.

Judgment affirmed.

*S. D. McGill,* for Plaintiff in Error;

*J. B. Johnson,* Attorney General, and *H. E. Carter,* Assistant, for Defendant in Error.

LOVE, C. J.—Under an indictment for murder, plaintiff in error, Abe Washington, was tried and convicted in the Circuit Court for Duval County of murder in the first degree, without recommendation to mercy, and sentence of death by being hanged (hanging) was imposed upon him by the court on March 9th, 1923. Thereafter, upon a writ of error the judgment and sentence of the Circuit Court was affirmed by the Supreme Court on the 8th day of December, A. D. 1923.

At the time of the commission of the crime for which plaintiff in error was convicted, as well also at the time of his trial, conviction and sentence, Sections 6123, 6124, 6125 and 6126 of the Revised General Statutes, 1920, providing that punishment by death shall in all cases be inflicted by hanging the convict by the neck until he be dead; that such punishment should not be inflicted until a warrant be issued by the Governor, commanding the sheriff to cause execution to be done and regulating the manner of such execution, were in force and effect.

Pending the disposition of the cause in the Supreme Court, Chapter 9169, Laws of Florida, entitled "An Act to amend Sections 6123, 6124, 6125 and 6126 of the Revised General Statutes of Florida Relating to the Manner and Means of Inflicting Punishment of Death in This State, so as to Provide for the Infliction of the Punish-

ment of Death by Electrocution'' was enacted by the Legislature and approved by the Governor May the 7th, A. D. 1923. By this legislation Section 6124 of the Revised General Statutes was amended, so that it now reads as follows:

"6124. (4021). HOW PUNISHMENT OF DEATH INFLICTED.—On and after January 1st, A. D. 1924, death by hanging as a means of punishment for crime in Florida is hereby abolished and electrocution, or death by electricity substituted therefor. Punishment of death shall in all cases be inflicted by causing to pass through the body of the convict a current of electricity of sufficient intensity to cause immediate death, and the application of such current must be continued until such convict be dead, and the sentence of death shall, at the time directed by the warrant, be executed within the walls of permanent death chamber, which the Commissioners of State Institutions are hereby authorized and required to provide at the State Prison Farm or such other place in the State of Florida, as such Commissioners of State Institutions shall establish, and the Superintendent of the State Prison, or in the case of his death, disability or absence, a deputy, shall be executioner. The Superintendent of the State Prison shall cause to be provided in conformity with this section and approved by the Governor and Commissioners of State Institutions the necessary electric chair or other appliances for the Infliction of the punishment of death in accordance with the requirements of this section. Before every execution, the death warrant authorizing the same shall be distinctly read in the presence of the condemned person to be executed immediately prior to the infliction of death as heretofore provided.''

Subsequent to the affirmance of the judgment of the Circuit Court by this court, the Governor of the State, on the

27th day of January, A. D. 1926, and under the provisions of said Chapter 9169, issued a warrant commanding that the sentence of death imposed upon plaintiff in error be executed by electrocution. Upon *habeas corpus* proceedings instituted by plaintiff in error in the Circuit Court for Duval County, it was held by said court that said warrant was in conflict with the judgment and sentence pronounced by the trial court and affirmed by the Supreme Court and was therefore inoperative and void.

Thereupon the Governor on the 16th day of February, A. D. 1926, issued a warrant in due form, directing and commanding the Sheriff of Duval County to execute the sentence and judgment of the Circuit Court of Duval County, Florida, by hanging the said Abe Washington, on March 12th, A. D. 1926, within the walls of the prison of Duval County, or within the enclosed yard of such prison, agreeable to Section 6124 of the Revised General Statutes.

Plaintiff in error again seeking relief from the execution of the sentence imposed upon him, addressed a petition for writ of *habeas corpus* on February 20th, A. D. 1926, to the Judge of the Circuit Court for Duval County, wherein he attacks the validity of the warrant of the Governor, directing the execution of his sentence of death by hanging, upon the ground that Chapter 6193 of the Laws of Florida expressly abolished capital punishment by hanging on and after January 1st, A. D. 1924, without any saving clause as to punishment for crime committed prior thereto, and that there is no law effective in the State of Florida since last mentioned date, authorizing capital punishment by hanging. Pursuant to the prayer of such petition writ of *habeas corpus* was duly issued, to which the following return was made:

"The cause of the detention of the defendant, Abe Wash-

ington, is as follows: That on Friday, March 9, A. D. 1923, this Honorable Court issued judgment and sentence as follows:

" 'And now comes the State of Florida, by Frank Wide-man, State Attorney for the Fourth Judicial Circuit of Florida, prosecuting for said State and comes again the defendant Abe Washington, in his own proper person, attended by S. D. McGill, his counsel, whereupon it is con-sidered, ordered and adjudged by the court that you, Abe Washington, are guilty of murder in the first degree, and the said defendant Abe Washington, being asked if he had anything to say why the sentence of the law should not be passed upon him, and saying nothing sufficient, it is further considered, ordered and adjudged by the court that you, Abe Washington, be remanded to prison, there to remain until such day as the Governor of the State of Florida shall by his warrant appoint, and on such day and at such time so appointed in said warrant, that you be taken by the Sheriff to the place of execution within the walls or enclosures of the jail or prison where you may be confined, and then and there hung by the neck until you be dead, and may God Almighty have mercy upon your soul.'

"And the said Abe Washington is further detained and held under and by virtue of a certain death warrant issued by the Governor of the State of Florida under the hand of the Honorable John W. Martin, Governor of Florida, at-tested by H. Clay Crawford, Secretary of State, to which is affixed the Great Seal of the State of Florida, the said death warrant being dated the 16th day of February, in the year of our Lord One Thousand Nine Hundred and twenty-six, wherein and whereby I, W. H. Dowling, as Sheriff of Duval County, Florida, was and am directed to execute the sentence and judgment of the Circuit Court

of Duval County, Florida, in the case wherein the State of Florida was plaintiff and the said Abe Washington was defendant and wherein the said Abe Washington was sentenced to be hanged by the neck until he be dead, the said death warrant directing and commanding that the said defendant Abe Washington be by the Sheriff of Duval County, Florida, on the 12th day of March, A. D. 1926, within the walls of the prison of said Duval County, or within the enclosed yard of such prison of Duval County, Florida, agreeable to the 6124th Section of the Revised General Statutes of the State of Florida, be hanged by the neck until he be dead, the original of which said death warrant is attached hereto and presented to the court herewith.''

After a hearing, the Circuit Court held that Chapter 9169 of the Laws of Florida was inapplicable; that under Article 3, Section 32 of the Constitution of the State of Florida, Section 6124 of the Revised General Statutes, in force at the time of the commission of the crime by the petitioner, was unaffected by the subsequent enactment of the Legislature, and that petitioner was legally detained by the Sheriff of Duval County by virtue of the sentence of the Circuit Court of said county, rendered on the 9th day of March, A. D. 1923, and the warrant of the Governor issued on the 16th day of February, A. D. 1926, and ordered the petitioner to be remanded to the Sheriff of Duval County. Plaintiff in error seeks to review this judgment by a writ of error to this court.

## Assignment of Error.

Five assignments of error appear in the record, only three of which are argued, and therefore in accordance with the well-established rule of this court the two not argued will be considered as abandoned. All of the assign-

ments of error urged here are argued together, and submit the same proposition; that is, whether or not Section 32, Article 3 of the Constitution of this State includes in its scope and effect a statute providing for the means to be followed in inflicting the penalty of death, when imposed for the commission of a capital offense.

Prior to the adoption of Chapter 9169, approved May the 7th, A. D. 1923, the manner of inflicting such penalty was by hanging (Section 6124, Revised General Statutes). By the terms of Section 2, Chapter 9169, amending Section 6124 of the Revised General Statutes, it is expressly provided that "On and after January 1st, A. D. 1924, death by hanging as a means of punishment for crime in Florida is hereby abolished and electrocution, or death by electricity, substituted therefor." No provision is made in this amending Act exempting its application to offenses committed prior to the time it became effective. At the time of the commission of the crime for which plaintiff in error was convicted and when he was sentenced to death by hanging, Section 6124 of the Revised General Statutes was in force. It is contended on behalf of plaintiff in error that the infliction of the penalty of death by means of hanging has been abolished and there is now no statute in force authorizing or justifying such means of punishment, and that the sole means provided by law for inflicting the penalty of death, when such penalty is imposed by statute, is by electrocution.

On the part of the State, it is submitted that Section 32, Article 3 of the Constitution, providing that "The repeal or amendment of any criminal statute shall not affect the prosecution or punishment of any crime committed before such repeal or amendment," has the effect of continuing in force and giving present effect to Section 6124, in so far as crimes punishable by death are concerned, when such

crimes were committed and sentence imposed prior to the adoption at least of the amending statute.

Opposing the contention of the State and in support of his position, counsel for plaintiff in error, both in oral argument and in his brief, contends that Section 32, Article 3 of the Constitution, neither has any application to, nor does it affect, either Section 6124 Revised General Statutes, or Section 2, Chapter 9169, and in support thereof advances and urges two propositions, which are:

First: That neither Section 6124, as it stood prior to the amendment, nor the Section as now amended, are Criminal Statutes within the meaning of the cited provisions of the Constitution.

Second: That if such original Section 6124, or as it now stands as amended, is a criminal statute, yet it does not provide for the "prosecution or the punishment of any crime committed before such repeal or amendment," inasmuch as the amending Act does not change the punishment of death, provided as a penalty for murder in the first degree without recommendation to mercy, but merely changes the means or mode of inflicting such punishment.

The propositions thus submitted for determination involve the construction to be placed upon the constitutional provision cited, and its application to and effect upon the statute under consideration.

The well-established rule in this State for construction of a penal law is that such law must be construed strictly and according to its letter. Nothing is to be regarded as included within it that is not within its letter as well as its spirit; nothing that is not clearly and intelligently described in the very words of the statute, as well as manifestly intended by the Legislature. And where a statute of this kind contains such an ambiguity as to leave a reasonable doubt of its meaning, where it admits of two construc-

tions, that which operates in favor of life or liberty is to be preferred. Ex Parte Bailey, 39 Fla. 734, 23 South. Rep. 552; Atlantic Coast Line R. Co. v. State, 73 Fla. 609, 74 South. Rep. 595; Sanford v. State, 75 Fla. 393, 78 South. Rep. 340.

It is further held to be the law in this State that the established rules of construction applicable to statutes also apply to constitutions. State *ex rel.* Moodie v. Bryan, 50 Fla. 293, 39 South. Rep. 929; Mugge v. Warnell Lumber & Veneer Co., 58 Fla. 318, 50 South. Rep. 645.

Under this rule of construction, then, will the propositions here submitted be determined.

This Section of the Constitution has frequently been considered by this court, but the exact questions here submitted have not been determined. Prior to the adoption of the Constitution of 1885, which included this provision, there was no general saving clause in force relative to the prosecution and punishment of offenses committed before the repeal or amendment of criminal statutes, as a result of which many persons charged with crime under statutes in force at the time of the commission of such crime escaped punishment because of the repeal or amendment of such statutes without any specific or implied saving clause in the repealing or amending statute. Ex parte Pells, 28 Fla. 67, 9 South. Rep. 833. This cited section was well considered by this court and its effect and influence as to criminal statutes repealed or amended by subsequent legislation, clearly defined in Raines v. State, 42 Fla. 141, 28 South. Rep. 57, wherein its was stated that, ''The effect of this constitutional provision is to give to all criminal legislation a prospective effectiveness; that is to say, the repeal or amendment by subsequent legislation of a pre-existing criminal statute does not become effective either as a repeal or as an amendment of such pre-existing statute insofar as

20—Vol. 92.

offenses are concerned that have been already committed prior to the taking effect of such repealing or amending law.'' Subsequent cases have cited and reaffirmed this case until there can be no uncertainty or doubt as to the meaning and effect of this constitutional provision. Shields v. State, 78 Fla. 524, 83 South. Rep. 391; Reynolds v. State, 33 Fla. 301, 14 South. Rep. 723; Sigsbee v. State, 43 Fla. 524, 30 South Rep. 816.

The determination of the first proposition advanced by plaintiff in error is dependent upon the scope and meaning of the term ''Criminal Statute'' contained in Section 32, Article 3 of the Constitution. We have been cited to no authority defining the term. However, the words taken separately bear a well defined and established meaning. ''Criminal'' is defined by Webster's New International Dictionary as ''relating to crime or its punishments.'' In Black's Law Dictionary it is defined as ''That which pertains to or is connected with the law of crimes, or the administration of penal justice, or which relates to or has the character of a crime.'' ''A statute is an act of the Legislature as an organized body; it is the written will of the Legislature expressed according to the form necessary to constitute it a law of the State and rendered authentic by certain prescribed forms and solemnities.'' 25 R. C. L. 760.

We may therefore define the term ''Criminal Statute'' as an Act of the Legislature as an organized body, relating to crime or its punishment, or by analogy to the definition of the term ''Criminal law'' which is given by 16 C. J. 49, as ''that branch or division of law which defines crimes, treats of their nature and provides for their punishment''; we may define a ''Criminal Statute,'' as, an Act of the Legislature as an organized body, defining crime, treating of its nature or providing for its punishment. It is suffi-

ciently broad and comprehensive as to include within its scope and meaning all those Acts of the Legislature as an organized body which deal in any way with crime or its punishment.

The statute, Section 6124, as it was prior to its amendment by Chapter 9169 and as it now stands, relating as it does to penal administration, is a legislative enactment for dealing with punishment for crime, and is therefore within the meaning of the term "Criminal Statute."

The definition of a "Penal Statute" as given in Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. Rep. 224, cited by counsel for plaintiff in error, is clearly limited to the facts decided in that case and with reference to the maxim of international law that "No courts of one country execute the penal laws of another," and thus cannot be considered as limiting the meaning and effect of the term "Criminal Statute" as it appears in the cited constitutional section.

The second contention of plaintiff in error, is that though Section 6124 as it originally stood prior to its amendment and as it now stands as amended, should be determined to be a criminal statute, nevertheless it is not within the purview of Section 32, Article 3 of the Constitution, for the reason that said Section 6124, prior to and after its amendment, does not by its provisions affect the prosecution or punishment of the crime for which plaintiff in error was convicted and sentenced. Counsel for plaintiff in error earnestly contends that said section changing the mode or means of inflicting the death penalty does not change the penalty itself, death, prescribed for the offense of which the latter stands convicted, and therefore does not affect the punishment prescribed.

Though the contention that said Section 6124 does not affect the prosecution of the cause wherein plaintiff in error

was convicted, be correct, we are unable to agree with the
contention that it does not affect the punishment prescribed
by law and imposed by the valid sentence of the trial court
upon plaintiff in error.   The word "punishment" as it
appears in said Section of the Constitution is a general
word, not restrained or limited in its application precisely
to the nature of the penalty imposed for the stated offense.
"Punishment" in a legal sense, as been defined to be any
pain, penalty, suffering, or confinement inflicted upon a
person by the authority of the law and the judgment or
sentence of the court for some crime or offense committed
by him."   State v. Pope, 79 S. C. 87, 60 S. E. Rep. 234.

The penalty prescribed for murder in the first degree, at
the time of the commission of the offense for which plaintiff
in error was convicted, and when sentence was imposed
upon him, was death.   Section 6124, Revised General Stat-
utes, as it stood at the time of the commission of such
offense, and at the time of the imposition of such sentence,
provided that, "Punishment of death shall in all cases be
inflicted by hanging the convict by the neck until he be
dead, and the sentence shall, at the time directed by the
warrant, be executed within the walls or inclosure of the
jail or prison where the prisoner may be confined."

Thus the punishment for murder in the first degree, as
provided by existing laws at the time of the commission of
the offense and the imposition of sentence was death, and
that by hanging.   In compliance with the then existing law
it was the sentence of the trial court that plaintiff in error,
for the offense of which he had been convicted and of which
he had been adjudged guilty, should be "hung by the
neck" until he was dead.   Such sentence is now final, the
power of the court over the subject matter is at an end, and
there exists no means by which the court can regain control
of the cause.   To hold that the subsequent amendment of

the statute providing how punishment of death shall be inflicted operates to stay or prevent the execution of a sentence, legal and final at the time it was imposed, would obviously prevent the execution of the sentence pronounced, and thereby prevent the punishment imposed by the law and the sentence of the court. The Constitutional provision that the repeal or amendment of any criminal statute shall not affect the punishment of any crime committed before such repeal or amendment would thereby be ignored and rendered nugatory. Such a conclusion is not only inconsistent with the plain meaning of the Constitution, but is clearly opposed thereto.

The case of Malloy v. State of South Carolina, 237 U. S. 180, 35 Sup. Ct. Rep. 507, cited by counsel for plaintiff in error and strongly relied upon to sustain his contention, is not in point. In that case the court had before it for consideration the effect of the constitutional prohibition against ex post facto laws, upon a statute of South Carolina, changing the mode of inflicting the death penalty from hanging to electrocution. Such statute was enacted after the commission of the crime for which the defendant was convicted, but before the trial court imposed the sentence of death by electrocution, following the State statute then in effect. The Supreme Court of the United States simply held that, as the statute did not change the penalty, death, for murder, but only the mode of producing this, the punishment was not increased and therefore such legislation was not *ex post facto,* an entirely different case from the one here presented.

The case of Aaron v. State, 40 Ala. 307, cited by counsel for plaintiff in error, as authority for the position that Section 32, Article 3 of the Constitution, does not render Section 6124, Revised General Statutes, as it stood before it was amended, effective in this case, fails to sustain such

contention. In that case the defendant was tried for an offense punishable by death, was convicted and duly sentenced to death on a day specified in the sentence, the law of that State making the day upon which execution is to be done a part of the original sentence. Defendant was not executed on the day specified in the sentence and was brought bfore the court at a subsequent term to be resentenced. After the original sentence and before the second, the law under which the defendant was convicted was repealed. The appellate court held that when the defendant came up to be resentenced, the situation was the same as when he came before the court to receive the original sentence, and inasmuch as the law under which defendant had been convicted, had been repealed, there was no power left in the court to impose sentence for his offense. In the opinion of the court, it is stated, however, that: "If the court was called upon to sentence the prisoner a second time, its power was restricted to the simple duty of fixing another day for the execution (an act not involving the exercise of such judicial power as would give the court control over the judgment) the intervening repeal could not have been regarded by the court. Such was held to be the law in Addington's case, 2 Bailey 516."

In this State it is the duty of the Governor, not that of the court, to fix the day for the execution of the sentence as provided by law and in compliance with the terms of a valid sentence, and therefore, under the authority of Aaron v. State, *supra,* the amendment of Section 6124 can not be regarded as a legal reason to arrest the judgment in this case.

In the Aaron case the saving clause in the repealing statute was in the following words: "Provided, however, that nothing in this section contained shall affect any prosecution now pending, or which may hereafter be com-

menced for any public offense heretofore committed, or which may hereafter be committed at any time prior to the day on which said New Penal Code shall go into effect as by this act provided.'' It is apparent that this saving clause is much narrower and more limited than are the terms of the provision of our constitution which we have considered, as the word ''punishment'' is not included in the saving clause of the Alabama statute, and thus an opinion based upon the effect of such a saving clause can not govern this court in its construction of the effect and meaning of the word ''punishment'' as it appears in the cited constitutional provision.

We are therefore of the opinion that by virtue of Section 32, Article 3 of the Constitution, the amendment of Section 6124, Revised General Statutes, did not become effective as an amendment of such section insofar as concerns the means to be followed in carrying out the sentence imposed upon plaintiff in error by the trial court.

The judgment of the court below is affirmed.

BROWN, C. J., AND WHITFIELD, ELLIS, TERRELL AND STRUM, J. J., concur.

BUFORD, J., disqualified.

BROWN, C. J., concurring:

Little can be added to the very able opinion of Judge LOVE. But this additional thought occurs to me. It is contended that a statute changing the method of punishment is not an ''amendment or repeal'' of a criminal statute, because ordinarily a criminal statute means a statute which defines a crime and provides a punishment therefor. Even if this definition of a criminal statute be admitted,

those sections of our Revised General Statutes prescribing the means of executing a death sentence by hanging as to any person convicted of any crime for which sentence of death shall have been awarded against him, and the section defining the crime of murder in the first degree and prescribing the death penalty therefor, although contained in different parts of the Revised General Statutes from those sections regulating the means of executing a death sentence, are each parts of one general subject. Not only were these sections all a part of one general criminal statute, when originally enacted, in 1868, but even if this were not the case, these sections should be construed in *pari materia* and in effect constitute one general statute defining the crime of murder in the first degree and providing and regulating the infliction of capital punishment therefor. Therefore, Chapter 9169 of the Acts of 1923, changing the method of inflicting the death penalty from hanging as prescribed in Sections 6123 to 6126 of the Revised General Statutes, is, in legal effect, an amendment of a criminal statute defining the crime of murder in the first degree and providing for its punishment. It follows that the saving clause in Section 32 of Article III of the Constitution would operate to prevent such amendatory statute from affecting the prosecution or punishment of the crime of murder committed before such amendatory statute was adopted.