

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Homer Garrison, Jr., Director
Texas Department of Public Safety
Camp Mabry
Austin, Texas

Dear Sir:

Opinion No. O-5765
Re: Whether defendant convicted for murder and sentenced to be hanged, but escaped before execution, can now be electrocuted.

Your request for our opinion in the hereinabove captioned matter has been received by this department. We quote from your letter as follows:

"A defendant was convicted for murder approximately 20 years ago and was sentenced to death by hanging. Before his execution, however, he escaped to another country. If this party should be apprehended now and returned to Texas, would the sentence he received be carried out by electrocution?"

Article 798, Code of Criminal Procedure, reads as follows:

"Whenever the sentence of death is pronounced against a convict, the sentence shall be executed at any time before the hour of sunrise on the day set for the execution not less than thirty days from the date of sentence, as the court may adjudge, by causing to pass through the body of the convict a current of electricity of sufficient intensity to cause death, and the application and continuance of such current through the body of such convict until such convict is dead."

The defendant mentioned by you was convicted under a statute which provided that mode of execution should be by hanging, and the above quoted article merely changes the mode of execution from hanging to electrocution.

The Court of Criminal Appeals of Texas in Ex parte Johnson, 258 S. W. 473), said:

"This application for discharge by way of writ of habeas corpus is upon the ground that the verdict declares that his death shall be by hanging, while the sentence declares that it shall be by electrocution. At the time of his trial, under the law of this state, the mode of execution where the death penalty was ordered was by hanging. By act of the Thirty-Eighth Legislature, Second Called Session, the mode of execution was changed to that of electrocution. See chapter 51, Acts 38th Leg., 2d Called Sess.

"The province of the jury was to decide upon the guilt of the applicant, and whether he should be punished at death or by confinement in the penitentiary. That part of the verdict using the words 'by hanging until dead' is surplusage, and in no sense vitiated the verdict. The method of execution was not within the scope of the jury's authority, but at the time the verdict was rendered was fixed by law. The change of the mode of execution from hanging to electrocution was within the scope of the legislative power, and did not offend against the constitutional provision prohibiting ex post facto legislation. Such is the view expressed by the Supreme Court of the United States and the courts in several of the states.

"In Malloy's Case, 237 U. S. 180, 35 Sup. Ct. 507, 59 L. Ed. 905, the question before the court was whether Malloy, who had committed the offense of murder in 1910, at which time the mode of execution was by hanging, and who was convicted in 1912, when the mode of execution was by electrocution, should be discharged. In the opinion rendered in 1915, the Supreme Court of the

United States, after reviewing some previous an-
nouncements by that court, used this language:

"'Impressed with the serious objection to
executions by hanging, and hopeful that means
might be found for taking life "in a less berbar-
ous manner," the Governor of New York brought the
subject to the attention of the Legislature in
1885. A commission thereafter appointed to as-
certain the most humane and practical method of
inflicting death sentence reported in favor of
electrocution. This was adopted by the statute
of 1888, and, with the approval of the courts,
has been in continuous use since that time. Re
Kemmler, 136 U. S. 436, 34 L. Ed. 519, 10 Sup. Ct.
Rep. 930, 119 N. Y. 569, 7 L. R. A. 715, 16 Am.
St. Rep. 859, 24 N. E. 6.

"'Influenced by the results in New York,
eleven other states have adopted the same mode
for inflicting death in capital cases; and, as
is commonly known, this result is the consequent
of a well-grounded belief that electrocution is
less painful and more humane than hanging.
Storti v. Com., 178 Mass. 549, 553, 52 L. R. A.
620, 60 N. E. 210; State v. Tomassi, 75 N. J. L.
739, 747, 69 Atl. 214.

"'The statute under consideration did not
change the penalty--death--for murder, but only
the mode of producing this, together with
certain nonessential details in respect of sur-
roundings. The punishment was not increased, and
some of the odious features incident to the old
method were abated.'"

The Supreme Court of Louisiana in State v. Pierre,
200 La. 808, 9 So. (2d) 42, said:

"The point made by the defendant that the
failure of the Legislature to include in Act 14

of 1940 a saving clause must necessarily free the accused is without merit, because we have already demonstrated that the statute does not affect any substantial right of the accused adversely, that it is purely procedural, affecting only penal administration by substituting the method of inflicting death by electrocution in lieu of the mode of inflicting death by hanging in capital cases and, therefore, it is not an ex post facto law. The only effect that a saving clause would have, if one had been placed in the Act, would be to preserve and save the old procedure of execution by hanging, which the defendant then could have insisted upon being carried out by virtue of the terms of the statute itself. Washington v. Dowling, 1926, 92 Fla. 601, 109 So. 588, and in Ex parte Browne, 1927, 93 Fla. 332, 111 So. 518.

"From what we have said it is clear that the defendant cannot be executed by hanging as the law which authorized that method of carrying out the death penalty has been repealed by the Legislature without a saving clause in the statute. He is not entitled to be discharged because he stands validly convicted and sentenced to death and cannot legally complain of the death penalty being inflicted by means of electrocution under a constitutional statute providing for that method or mode of execution.

"Having reached the conclusion that Act 14, of 1940 is applicable and constitutional and that its provisions do not deprive the relator of any substantial right and that he stands condemned under a valid conviction and sentence of death, the question arises as to whether or not that provision in the sentence providing for the mode of inflicting the penalty by hanging may be treated as surplusage and, by operation of law, the new method of carrying out the penalty by electrocution may be substituted in its place without the necessity of this Court amending the sentence in that respect or remanding the case to the district court to have the sentence amended so as to conform with the new law, Act 14 of 1940.

"In the cases of Woo Dak San v. State and
Hernandez v. State, supra, where the defendants had
been sentenced to death by hanging under the law,
but before the executions could take place, legis-
lation was passed which changed the mode of in-
flicting the death penalty from hanging to elec-
trocution and lethal gas, respectively, the Court
apparently considered that by mere operation of law
the new method of execution was the legal way to
carry out the penalty without amending the sentences,
because, in the former case it directed execution
of the sentence pronounced and in the latter, on
appeal, it simply affirmed the judgments.

".  .  .

"In State v. Brown, supra, the defendant was
convicted of murder in the first degree and sen-
tenced to death by hanging, as provided by the law
in effect at that time. Subsequently, the Legis-
lature passed a statute, which repealed outright,
without a saving clause, the law providing for the
infliction of the death penalty by hanging. The
new act substituted the method of the execution by
the administration of lethal gas. The Attorney-
General filed a motion to have the sentence amend-
ed to conform with the new law. The Court followed
the rule of the Malloy case and other authorities
therein cited and concluded that as the defendant
was not affected in any of his substantial consti-
tutional or statutory rights and as the change was
purely procedural, relating solely to penal admin-
istration, there was no reason why the new law
should not apply to cases pending at the time the
change went into effect. The Court then considered
the question of whether or not it should impose the
sentence in accordance with the new law or remand
the case to the district court for that purpose and
concluded by affirming the conviction of the appel-
lant of murder in the first degree and the inflic-
tion of capital punishment and set aside the sen-
tence to suffer death by hanging, and remanded the
case to the trial court to have the sentence im-
posed in accordance with the provisions of the new
law.

".  .  .

"In the instant case, the accused was sentenced to death and the mode of inflicting the penalty was by hanging, in accordance with the law as it existed at that time. While the case was pending, the State statute changing the method of execution to electrocution became effective. As this new law had retrospective effect, execution by hanging as stated in the sentence did not conform to the new method of inflicting the death penalty. The verdict of the jury finding the defendant guilty as charged, an unqualified verdict, as well as the sentence imposing the death penalty, were held to be valid by this Court, and the Supreme Court of the United States refused to review the case. Executing the present valid death sentence by hanging the defendant is not in conformity with the new law requiring the infliction of the death penalty by electrocution. As the manner of executing the death penalty by electrocution is more humane and does not affect any substantive or substantial right of the defendant, he cannot complain of the sentence being amended so as to conform with the provisions of Act 14 of 1940."

The Supreme Court of Louisiana in Henry v. Reid, 201 La. 858, said:

"The main complaint of the relatrix is that for many years under the previous law of this State, it has been customary to provide in the judgment or sentence of death the manner or mode of execution of the prisoner (i. e., death by hanging), and that this was a safe and definite way of carrying out the law and should have been followed.

"Even if it be conceded that stipulating in the judgment of sentence the manner and mode of the execution of the death sentence was the better practice, it is observed that the relatrix has not pointed to any law that shows, under the facts and circumstances of this case, she is being deprived of any legal right, or is about to be executed in a manner and by a means contrary to the law as it exists today. Her attorneys were aware of the fact that the judgment of sentence was to be carried out according to law, at the time her appeal was finally passed upon by this Court and did not then raise this issue. State v. Henry, 200 La. 875, 9 So. 2d 215.

Honorable Homer Garrison, Jr., page 7

"Having failed to show that she was in any way prejudiced or was unlawfully deprived of any right, the trial judge properly refused to grant a preliminary injunction to restrain the sheriff and his deputies from the performance of their duties in carrying out the sentence of the court and the death warrant of the Governor.

"With reference to the contention that Act No. 14 of 1940 is unconstitutional because it is an ex post facto law, it is sufficient to say that this Court passed upon this identical question in the case of State v. Pierre, 200 La. 808, 9 So. 2d 42, and held that the Act was not unconstitutional. Thereafter, the accused applied to the Supreme Court of the United States for a writ of certiorari, which was denied on October 12, 1942. See, State of Louisiana ex rel. Hugh Pierre v. Honorable Sam Houston Jones, Governor of Louisiana, 63 S. Ct. 64, 87 L. Ed."

In view of the foregoing authorities it is the opinion of this department that when the defendant is apprehended and returned to Texas, he may be electrocuted.

APPROVED APR 14, 1944

ATTORNEY GENERAL OF TEXAS

acting

JCD/JCP

Very truly yours

ATTORNEY GENERAL OF TEXAS

By          J. C. Davis, Jr.
            J. C. Davis, Jr.
            Assistant


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN