PER CURIAM.
In parallel actions in the lower tribunal, AppellanVState of Florida petitioned for writs of prohibition and requested issuance of orders to show cause. Specifically, the state sought emergency orders from the trial court 1) prohibiting Appellee, Florida Parole Commission (“Commission”), from taking any fur *325 ther action in the eases of inmates Charles R. Moore and Kenneth B. Matthews pursuant to its authority over prison control release policy, and 2) directing the Commission to show cause why a writ of prohibition should not be entered in the cases involving Moore and Matthews as well as other similarly situated prison inmates. The petitions were consolidated. Having found no basis for issuance of the writs, the trial court denied the petitions. We affirm the trial court’s decision.
The proceedings below arose after Moore’s crime victim (Sara Riggs) advised the state that she had received notification from the Commission concerning a control release hearing to be held for inmate Moore. Control release is an administrative function of the Commission utilized to maintain the state prison system below 97.5% of its lawful capacity. § 947.146(2), Fla.Stat. (1991). Relying on state constitutional authority, the state challenged the Commission’s application of control release procedures to set a control release date for Moore. Diann O’Bryan-Lowe, who is the sister of Matthews’ deceased crime victim, received notice of a control release hearing for Matthews. Subsequently, the state initiated another constitutional challenge to the Commission’s authority to set a control release date for Matthews.
The crimes for which Matthews and Moore were convicted and imprisoned were committed in 1986 and 1988, respectively. The timing of the offenses within the 1983-88 window period is relevant to the constitutional question at issue for the following reasons. Chapter 947 deals with matters involving the Commission, and section 947.146, Florida Statutes, specifically deals with the Commission’s authority over control release procedures. When Matthews committed his crime in 1986, section 921.001(8), Florida Statutes (1985), stated:
A person convicted of crimes committed on or after October 1, 1983, or any other person sentenced pursuant to sentencing guidelines adopted under this section shall be released from incarceration only:
(a) Upon expiration of his sentence;
(b) Upon expiration of his sentence as reduced by accumulated gain-time; or
(c)As directed by an executive order granting clemency.

The provisions of chapter 947 shall not he applied to such person.

(Emphasis added.) On the date of Moore’s offenses in 1988, section 921.001(10), Florida Statutes (1987), was identically worded. One year later, that subsection was amended to cover persons convicted of crimes committed on or after October 1, 1983, but before October 1, 1988. See § 921.001(10), Fla.Stat. (Supp.1988); Ch. 88-122, § 8, Laws of Fla. Subsequently, the last line of that subsection was amended to read:
The provisions of chapter 947 shall not be applied to such person except that such person may be released upon the granting of control release pursuant to s. 94.7.14.6.
§ 921.001(10), Fla.Stat. (Supp.1990); Ch. 89-526, § 3, Laws of Fla. (emphasis added).
The gravamen of the petitions is that section 947.146, Florida Statutes (1991), the statute establishing the Commission’s authority over control release, is unconstitutional as applied to inmates Moore and Matthews under article X, § 9, Florida Constitution, which provides:
Repeal or amendment of a criminal statute shall not affect prosecution or punishment for any crime previously committed.
Appellants asserted that the Commission has no authority to set control release dates or to release inmates on control release such as Moore and Matthews, who committed their crimes prior to the enactment of section 947-146. The trial court was asked to determine whether the above-cited statutory amendment implicated “a criminal statute” and “affected punishment” as contemplated in the constitutional prohibition.
Pursuant to the Commission’s suggestion of mootness, we have been apprised that control release provisions did not impact upon Matthews’ release, inasmuch as he was not released from prison until July 15, 1993, when his sentence expired. Moore’s control release date is set at February 7, 2004, which is the expiration date of his sentence, and is non-advanceable. We decline to order dismissal of the cause on grounds of mootness, however, as the critical matters at issue here *326 are likely to reappear in the eases of other inmates who committed crimes within the applicable 1983-88 period. See Times Pub. Co., Inc. v. City of St. Petersburg, 558 So.2d 487, 491 (Fla. 2d DCA 1990); Nemeth v. R.B. Shore, 511 So.2d 1118 (Fla. 2d DCA 1987).
In support of their petitions, Appellants rely largely on Washington v. Dowling, 92 Fla. 601, 109 So. 588 (1926), to argue that section 921.001 is a “criminal statute” that “affects punishment.” .They contend that because section 921.001 did not permit release under the control release program at the time Moore and Matthews committed their offenses, any subsequent amendment is unconstitutional as applied if it purports to do otherwise.
We think the facts in Washington readily distinguish it from the case sub judice. Under the law in effect when Washington committed his crime, hanging was deemed the appropriate means of carrying out the death penalty. Pending the disposition of Washington’s cause in the Florida Supreme Court, a statutory amendment provided for death by electrocution. Apparently, Washington preferred electrocution over hanging. Based on the nearly identical predecessor provision to article X, § 9, Florida Constitution, the court ruled against the inmate. The statute in effect when Washington committed the offense was found to be “a legislative enactment for dealing with punishment for crime” and, thus, a “criminal statute.” Id., 109 So. at 591. Accordingly, the statutory revision was not permitted to affect Washington’s punishment for the previously committed crime. The challenged modification of the law in Washington directly related to the sentence pronounced by a criminal court and concerned the specific mode of capital punishment to be imposed. In contrast, the challenged statutory change in the instant appeal did not relate to the original penalty assigned by the sentencing court to the crimes, and was “not directed toward the traditional purposes of punishment.” Dugger v. Rodrick, 584 So.2d 2, 4 (Fla.1991), cert. den., — U.S. -, 112 S.Ct. 886, 116 L.Ed.2d 790 (1992).
Another decision cited by Appellants, Castle v. State, 330 So.2d 10 (Fla.1976), involved the amendment of a criminal statute, as did Washington. When Castle committed arson, the statutory maximum penalty was ten years’ imprisonment. By the time of his trial, the Legislature had reduced the maximum sentence to five years. The Florida Supreme Court affirmed the district court’s decision that Castle was not entitled to the benefit of the lower maximum sentence. Id. at 11. Appellants’ reliance on Strachen v. State, 380 So.2d 487 (Fla. 3d DCA 1980), is also misplaced, as the statutory change at issue there specifically related to the sentence. When Strachen committed the crime, the law provided no entitlement to credit for time served in the sex offender program. A subsequent statutory revision addressed entitlement to credit. Citing Castle, the Third District Court affirmed the order denying credit time. 380 So.2d at 488.
In the instant case, the trial court properly found no constitutional violation in the amending of section 921.001 to permit application of the control release provisions to inmates like Matthews and Moore. The Commission notes that typically, a “criminal statute” proscribes conduct. The trial court correctly stated in its order:
Section 921.001, Florida Statutes, is not a criminal statute in the classic sense, because it does not define a particular crime, classify a particular crime in terms of seriousness, or set out the punishment for a particular crime. Section 921.001 deals, instead, with the way the executive branch may carry out the sentence imposed by the judicial branch of government.
In its statement of purpose, the Legislature explicitly provided in section 947.146(2), Florida Statutes (1991), that “[cjontrol release is an administrative function solely used to manage the state prison population within lawful capacity.” Control release bears no relationship to the punishment that a trial court may impose upon conviction of a crime. See Dugger v. Grant, 610 So.2d 428, 432 (Fla.1992) (because provisional credits are solely a method of reducing prison overcrowding, they do not tie in with an inmate’s overall length of sentence nor do they create reasonable expectations of release at a given time). Given the intent of the program, “[n]o *327 inmate has a right to control release.” See Fla.Admin.Code R. 23-22.010(4). Those inmates who are deemed to pose the least threat to society are assigned advanceable control release dates, whereas those who are perceived to be the greatest risks receive maximum dates that are not advanceable. The Commission rightfully noted that courts of law, and not the Commission, impose punishment for the violation of criminal statutes. Both Moore and Matthews received prison sentences for the crimes they had committed. The Commission does not impose sentences and is not involved in matters of specific punishment. The need of the Commission to set a control release date and to alleviate prison overcrowding bears no relationship to the original sentence assigned to the crime upon conviction. See Grant, 610 So.2d at 432; Rodrick, 584 So.2d at 4.
The challenged order states in part:
While the court in Washington v. Dowling found that the statute affecting the mode in which the executive branch would carry out the death sentence affected the punishment for the crime, such a conclusion is not appropriate in the case at bar.
The trial court properly relied on the analysis in Rodrick for guidance in determining that the challenged statutory provisions are not unconstitutional as applied to the two inmates. In Rodrick, the trial court denied inmate Rodrick’s petition for writ of mandamus challenging the Florida Department of Corrections’ denial of provisional credits. The Second District Court reversed with instructions to grant the writ because Rodrick had committed his crimes prior to the enactment of a statute that precluded him from eligibility for provisional credits. The Florida Supreme Court quashed the appellate decision in Rodrick, id. at 5, and approved our decision denying an inmate’s claim for credits in Miller v. Dugger, 565 So.2d 846 (Fla. 1st DCA 1990) (application of purely procedural statutory amendment denying provisional gain-time credits to inmate convicted prior to enactment date was not ex post facto violation).
As with provisional credits, control release “provide[s] a temporary mechanism to alleviate the administrative crisis created by prison overcrowding” and is merely “procedural in nature [rather than] directed toward the traditional purposes of punishment.” Rodrick, 584 So.2d at 4. Thus, a prisoner’s eligibility for, and receipt of, a control release date is not a product of the overall length of the sentence imposed. Id. Adopting the reasoning presented by the supreme court in Rodrick in rejecting the challenge to denial of provisional credits, we are not persuaded by Appellants’ attempt to compare the control release program to other types of awards such as those addressed in Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (substantive statutory award of basic good conduct gain-time), and Waldrup v. Dugger, 562 So.2d 687 (Fla.1990) (incentive gain-time). As was stated in Rodrick, basic and incentive gain-time do relate to the sentence imposed, and “a release date reduced by these awards can be reasonably predicted, based upon length of the term meted out.” 584 So.2d at 4. On the other hand, due to its very nature and purpose, control release eligibility is not a factor that will enter into a defendant’s decision about whether to plea bargain or into the sentencing court’s determination of what penalty is to be imposed. Weaver, 450 U.S. at 32, 101 S.Ct. at 966; Rodrick.
We decline to extend the scope of article X, § 9, to include the statutory law pertaining solely to the Commission’s administrative management of the state prison population. As Appellants have failed to demonstrate any violation of the Florida Constitution, we find the trial court properly denied the petitions for writ of prohibition.
AFFIRMED.
SMITH, WOLF and MICKLE, JJ., concur.