DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PATRICK MICHAEL LANGEL,**
Petitioner,

v.

**STATE OF FLORIDA,**
Respondent.

No. 4D18-2121

[September 5, 2018]

Petition for writ of prohibition to the Nineteenth Judicial Circuit, St. Lucie County; Dan L. Vaughn, Judge; L.T. Case No. 56-2016-CF-000799.

Jordan M. Showe of Robert J. Watson, P.A., Stuart, for petitioner.

No appearance for respondent.

GROSS, J.

This petition for writ of prohibition arises from a "Stand Your Ground" hearing where the circuit court ruled that petitioner was not entitled to immunity from prosecution. We deny the petition.

In February 2016, petitioner Patrick Langel killed the victim by shooting him in the head. Petitioner sped away from the scene, crashed his vehicle, and tried to hide from police. He is charged with manslaughter with a firearm.

Petitioner contends that the trial court erred in denying his claim of self-defense immunity from prosecution by placing the burden on him to prove his entitlement to immunity by a preponderance of the evidence. *See Bretherick v. State*, 170 So. 3d 766, 779 (Fla. 2015) (confirming that the defendant bears the burden of proving entitlement to immunity by a preponderance of the evidence); *Joseph v. State*, 103 So. 3d 227, 230 (Fla. 4th DCA 2012) ("Petitioner had the burden of proving his entitlement to self-defense immunity by a preponderance of the evidence."); *Peterson v. State*, 983 So. 2d 27, 29 (Fla. 1st DCA 2008) ("[T]he trial court must determine whether the defendant has shown by a preponderance of the evidence that the immunity attaches.").

Petitioner asserts that the trial court should have applied a 2017 amendment to the self-defense law, which places the burden on the state to disprove a prima facie claim of self-defense immunity. The offense, and the immunity hearing in this case, both predate the effective date of the amendment. The trial court denied Petitioner's motion for reconsideration, which sought to apply the amendment retroactively, and this petition followed.

## *Retroactivity of the 2017 Amendment*

In our recent decision in *Hight v. State*, 43 Fla. L. Weekly D1800a (Fla. 4th DCA Aug. 8, 2018), we agreed with the third district in *Love v. State*, 247 So. 3d 609 (Fla. 3d DCA 2018), *rev. granted*, No. SC18-747, 2018 WL 3147946 (Fla. June 26, 2018), that because the 2017 amendment to the "Stand Your Ground" self-defense law is at least partially substantive, it cannot be applied retroactively. *See Smiley v. State*, 966 So. 2d 330, 334 (Fla. 2007) ("[A] statute that achieves a remedial purpose by creating substantive new rights or imposing new legal burdens is treated as a substantive change in the law.") (citation and internal quotation omitted)); Art. X, § 9, Fla. Const. ("Repeal or amendment of a criminal statute shall not affect prosecution or punishment for any crime previously committed."). *But see Martin v. State*, 43 Fla. L. Weekly D1016c (Fla. 2d DCA May 4, 2018) (concluding that the 2017 amendment is procedural and can be applied retroactively), *notice invoking discretionary review filed*, No. SC18-789 (Fla. May 17, 2018) (stayed pending disposition of *Love*); *Commander v. State*, 246 So. 3d 1303 (Fla. 1st DCA 2018) (accepting the state's concession of error in failing to apply the amendment retroactively).

Section 776.032(4), Florida Statutes (2017), enacted by Chapter 2017-72, Laws of Florida, became effective June 9, 2017, and provides:

> (4) In a criminal prosecution, once a prima facie claim of self-defense immunity from criminal prosecution has been raised by the defendant at a pretrial immunity hearing, the burden of proof by clear and convincing evidence is on the party seeking to overcome the immunity from criminal prosecution provided in subsection (1).

§ 776.032(4), Fla. Stat.

Nothing in the plain language of the statute indicates an intent to retroactively apply the amendment to offenses committed before its effective date. "[T]he Legislature's inclusion of an effective date for an amendment is considered to be evidence rebutting intent for retroactive

- 2 -

application of a law." *Fla. Ins. Guar. Ass'n, Inc. v. Devon Neighborhood Ass'n, Inc.*, 67 So. 3d 187, 196 (Fla. 2011). Petitioner contends that the legislative history of the amendment shows that the Legislature was responding to the Supreme Court's decision in *Bretherick* and seeking to clarify what its intent had been all along. However, *Bretherick* was not decided in a legal vacuum. Petitioner's argument ignores district court of appeal decisions that established the preponderance of the evidence standard and placed the burden on the defendant for many years before the Legislature changed the law.

We conclude that, for retroactivity purposes, the 2017 amendment is a "criminal statute" that substantively alters criminal law, not a purely procedural change. The statute creates new legal rights for those asserting a claim of self-defense immunity − by making it easier to establish the right to immunity − and imposes new legal burdens on the state to maintain a prosecution. Thus, this criminal statute "is treated as a substantive change in the law" that cannot be applied retroactively under the Florida Constitution. *Smiley*, 966 So. 2d at 334.

As the Supreme Court explained in *Smiley*, "[w]ith regard to article X, section 9, the term 'criminal statute' is defined in a broad context." 966 So. 2d at 337. A "criminal statute" is "an act of the Legislature as an organized body relating to crime or its punishment . . . defining crime, treating of its nature, or providing for its punishment . . . [or] deal[ing] in any way with crime or its punishment." *Id.* (quoting *Washington v. Dowling*, 109 So. 588 (Fla. 1926)). Article X, section 9 of the Florida Constitution is "broad and comprehensive" and includes "within its scope and meaning all those acts of the Legislature as an organized body which deal in any way with crime or its punishment." *Washington*, 109 So. at 610-11.

The 2017 amendment altered a legal standard, the quantum of proof required to establish immunity from prosecution. Even if the statute has procedural aspects in its shifting of legal burdens, it has a substantive effect on the right to immunity and falls within the broad scope of article X, section 9 of the Florida Constitution.[1] *See Com. v. Sargent*, 503 A.2d 3,

---

[1] In the context of civil cases, Florida courts have recognized that "generally in Florida the burden of proof is a procedural issue." *Shaps v. Provident Life & Acc. Ins. Co.*, 826 So. 2d 250, 254 (Fla. 2002). However, we are aware of no Florida Supreme Court case holding that a change to the legal standard applicable to an affirmative defense in a criminal matter (particularly one governing the substantive right to immunity from prosecution) is purely procedural.

6 (Pa. 1986) ("A statute establishing a burden of proof is difficult to classify as either a procedural rule or a rule affecting substantive rights and seems to contain elements of each."). We agree with the third district in *Love* that the amendment's procedural provisions are intertwined with substantive rights. 247 So. 3d at 611. The statute is not purely procedural, and article X, section 9 of the Florida Constitution bars retroactive application.

### *Petitioner's Claim Lacks Merit*

Petitioner states no basis for relief as the trial court properly determined that he is not entitled to immunity from prosecution. Petitioner did not testify and has never provided an account of what led to the shooting. There are no witnesses, video, or other evidence of what transpired at the time of the shooting. Although petitioner admits he shot the victim, he presented no evidence that he acted justifiably in using deadly force, which requires a showing that he "reasonably" believed that the use of deadly force was "necessary to prevent imminent death or great bodily harm." *See* § 776.012(2), Fla. Stat. Nor did he show that the use of deadly force was necessary "to prevent the imminent commission of a forcible felony." *Id.* Petitioner did not show any of the circumstances in section 776.013(2) that create a presumption of fear of death or great bodily harm.

To raise a "prima facie claim of self-defense immunity from criminal prosecution" under section 776.032(4), a defendant must show that the elements for the justifiable use of force are met.[2] Ordinarily, this will

---

As noted by the Second District Court of Appeal in *Martin*, 43 Fla. L. Weekly D1016c n.4, other courts, including the Supreme Court of the United States, have ruled that the burden of proof is substantive. *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20-21 (2000) ("Given its importance to the outcome of cases, we have long held the burden of proof to be a 'substantive' aspect of a claim. . . . That is, the burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it.") (citations omitted).

[2] The Legislature has not defined what constitutes a "prima facie claim" of self-defense immunity. The term "prima facie" is a Latin expression meaning "at first face" or "at first appearance." Black's Law Dictionary defines it as: "Sufficient to establish a fact or raise a presumption unless disproved or rebutted." BLACK'S LAW DICTIONARY, 1,228 (8th ed. 2004). The term "prima facie case" has two distinct meanings in law: (1) "The establishment of a legally required rebuttable presumption"; and (2) "A party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." *Id.*; *see also* Georg

require the defendant to testify or to otherwise present or point to evidence from which the elements for justifiable use of force can be inferred. Only then would the burden shift to the state to "overcome the immunity" by clear and convincing evidence. § 776.032(4), Fla. Stat.

Petitioner's speculative claim is based upon equivocal circumstantial evidence that, in his view, shows the victim was attempting to rob petitioner. Petitioner relies heavily on the fact that the victim's closed pocket knife was found on the ground beneath the victim's body.

We agree with the trial judge that the totality of the evidence overwhelmingly contradicts petitioner's theory and that he is not entitled to immunity from prosecution. Even if the 2017 amendment were applied, petitioner failed to state a "prima facie claim" for immunity, so the burden would not have shifted to the state to disprove the claim. Additionally, we conclude that, assuming petitioner raised a prima facie claim, the evidence presented at the hearing refuted it clearly and convincingly.

The undisputed evidence shows that petitioner met the victim for the first time at a bar on the night of the shooting. After the bar closed, petitioner followed the victim to the motel where the victim would be staying. Both were intoxicated. The victim was shot in the head above the right eye. His body was found outside the open door of his vehicle, which was still running. He was face up on the parking surface with his right foot on the driver-side door sill. The victim had a small baggie with cocaine residue in his front pants pocket. On the ground beneath his left shoulder was a closed pocket knife with a four-inch blade. Co-workers identified the knife as the victim's. Police found a spent shell casing (matched forensically to petitioner's gun) on the ground outside on the passenger side of the victim's vehicle. The passenger-side door and window were closed and had no bullet holes. No significant blood spatter was found in the vehicle.

After the shooting, petitioner fled the scene in his own vehicle at a high rate of speed. He crashed and abandoned his vehicle in a field. Petitioner discarded the gun and hid from police. He surrendered after a K9 unit closed in on his position. Petitioner did not give police an account of what led to the shooting. At the time of his arrest, he did not assert that the victim had tried to rob him or that he shot the victim in self-defense.

---

Nils Herlitz, *The Meaning of the Term "Prima Facie,"* 55 LA. L. REV. 391 (1994). We believe that section 776.032(4) adopts the first definition of a "prima facie case."

Petitioner did not testify at the hearing, and he has never provided any account of what transpired in the motel parking lot.[3]

In support of his theory that the victim attempted a robbery, petitioner points to evidence that, while at the bar drinking, the victim was waiting for his paycheck to be deposited electronically to his bank account. He was expecting the deposit by midnight and records showed that the victim checked his bank account nine times that night. The victim did not pay his bar bill, and witnesses testified that the victim seemed "aggravated" or "agitated" by the deposit delay. The victim tried to borrow $50 from a friend. Petitioner argues this gave the victim a motive to rob petitioner with the knife. According to petitioner, he was an easy target because of his drunkenness, and the victim "was out of money and out of cocaine and noticeably 'agitated' about it."

Petitioner notes that the post-mortem toxicology report showed that the victim had a .165 blood alcohol level reading, with a low level of cocaine and cocaine metabolites in his system. Petitioner presented testimony from the medical examiner that the bullet transected the victim's brain stem allegedly causing instant death. The medical examiner testified that the victim would have dropped anything in his hand at the time of the shooting, and this showed the victim was holding the knife in his hand when he was shot. Petitioner argues that blood spatter on the victim's right hand shows he was holding the knife near his face when shot.

Video from the bar showed that the victim and petitioner left the bar at about 1:22 a.m. after last call. Just before leaving, the victim shook petitioner's hand and gave him a "bro-hug" embrace. Petitioner followed the victim out the door about two seconds later. The victim then drove to the nearby motel where he planned on staying with a co-worker. Records showed that the victim sent a text message at 1:26 a.m. confirming that he would be spending the night in the co-worker's motel room and that "he was comeing" [sic]. Videos from another nearby motel showed the victim's vehicle travelling on the roadway, followed immediately by petitioner's vehicle, at about 1:36 a.m. This camera later captured petitioner's vehicle speeding away after the shooting at 1:41 a.m.

---

[3] Even if Petitioner had testified or otherwise given an account of events, the trial judge was not required to accept it as true. The trial court would have authority to assess the credibility of a defendant's version of events in light of the other evidence in the case. In a murder prosecution, the victim obviously cannot present a contrary version of events.

In its order, the trial court noted that petitioner was larger than the victim. The victim was 5' 7" and 131 pounds. Petitioner was 5' 10" and 170 pounds. Among other things, the trial court found that it "defies reason" that the victim intended on robbing petitioner but did not have time to open the pocket knife, while petitioner had time to react, pull out his semiautomatic handgun, chamber a round, and shoot the victim in the head. The court noted that no evidence was presented regarding how petitioner carried his gun or that he kept a round in the chamber. There was no evidence to explain why petitioner followed the victim to the motel, and the evidence that the victim sent a text message at 1:26 a.m. to tell the co-worker he was coming to stay in the motel room was contrary to petitioner's theory that the victim was planning a robbery. Finally, the court noted that the victim's vehicle was stopped near a dumpster with its lights on and engine running and not in a marked parking space, which suggests the victim may have stopped suddenly or unexpectedly.

The trial court concluded: "[T]here is no evidence to support the theory that [the victim] pulled his knife first or that he issued some form of threat of a robbery. The more likely fact scenario, given the fact that the pocket knife remained in a closed position, is that [Petitioner] was the first to draw a weapon." We agree.

Under any standard, the trial court did not err in denying petitioner's claim of self-defense immunity based on these facts. This petition lacks merit and is denied with prejudice.

*The petition for writ of prohibition is denied.*

MAY and CIKLIN, JJ., concur.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***

- 7 -