# Third District Court of Appeal

## State of Florida

Opinion filed March 2, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-273
Lower Tribunal No. 16-253-A-M
_____

**The State of Florida,**
Appellant,

vs.

**Gary Charles Moore, II,**
Appellee.

An Appeal from the Circuit Court for Monroe County, Ruth Becker, Judge.

Ashley Moody, Attorney General, and Richard L. Polin, Assistant Attorney General, for appellant.

Carlos J. Martinez, Public Defender, and Susan S. Lerner, Assistant Public Defender, for appellee.

Before EMAS, GORDO and LOBREE, JJ.

EMAS, J.

## I.  INTRODUCTION

The State appeals from an order granting the motion of defendant, Gary Charles Moore, II, to dismiss criminal charges against him based upon self-defense immunity conferred by Florida's Stand Your Ground law, section 776.032, Florida Statutes (2016).

We reverse and remand the cause for reinstatement of the criminal charges, because defendant's motion failed to meet the threshold pleading requirement for raising a prima facie claim of self-defense immunity.

## II.  FACTS AND PROCEDURAL BACKGROUND

The State charged Moore by information with second-degree murder of Jonathan Stevens, alleging Moore shot and killed Stevens with a shotgun on December 23, 2016.  On August 22, 2018, Moore filed a motion entitled "Motion to Dismiss Based on Statutory Immunity" alleging that Moore acted in self-defense in shooting and killing Stevens.  Section 776.032, entitled "Immunity from criminal prosecution and civil action for justifiable use or threatened use of force" provides in pertinent part:

> (1)    A person who uses or threatens to use force as permitted in s. 776.012, s. 776.013, or s. 776.031 is justified in such conduct and is immune from criminal prosecution . . . .  As used in this subsection, the term "criminal prosecution" includes arresting, detaining in custody, and charging or prosecuting the defendant.

* * *

(4)  In a criminal prosecution, **once a prima facie claim of self-defense immunity from criminal prosecution has been raised by the defendant** at a pretrial immunity hearing, the burden of proof by clear and convincing evidence is on the party seeking to overcome the immunity from criminal prosecution provided in subsection (1).

(Emphasis added).

Given the central importance of the factual allegations asserted in support of the immunity claim, the fifteen numbered paragraphs contained in Moore's motion are set forth below.  Emphasis has been added to those portions most relevant to a determination of whether Moore has alleged sufficient facts to raise a prima facie claim of self-defense immunity pursuant to section 776.032(4), thereby shifting the burden to the State to establish, by clear and convincing evidence, that Moore is not entitled to self-defense immunity from criminal prosecution for shooting and killing Jonathan Stevens.

### *The Allegations in Defendant's Motion to Dismiss*

1. The Defendant is charged by Information with Second Degree Murder with a Firearm.
2. On December 23, 2016, *the Defendant called 911 and reported that he had shot Jonathan Stevens with a shotgun.* The Defendant provided his full name and address, and he requested that medics respond.  *The Defendant further*

3

***reported to the 911-operator that Stevens had threatened him.***

3. When the police arrived, after initially responding to the wrong location, they located the Defendant on scene. The Defendant informed the responding deputies that he was the one who called the police.

4. The police also located ***Stevens lying unconscious on the ground with a single shotgun wound to his abdomen***. Despite life-saving efforts on scene, Stevens succumbed to his injuries. (The medical examiner testified in his deposition that Stevens most likely did not live more than two minutes after he was shot.)

5. The shooting occurred at 10660 7th Ave. Gulf, Marathon, Florida, where there is located a two-bedroom, single family home owned and occupied by Robert McElroy. (McElroy was not home at the time of the shooting, having gone to visit family for the holidays.) Several months prior to the shooting, the Defendant moved into the home where he occupied one of the bedrooms and paid rent to McElroy. (The Defendant and McElroy had known each other approximately fifteen years.)

6. Shortly after the Defendant moved in with McElroy, Stevens [the decedent] moved into a travel trailer situated on the property, which was also owned by McElroy. The Defendant facilitated this arrangement at the request of a mutual friend.

7. Between the house and the travel trailer, there was an area in the front yard, including a picnic table, where the men would often congregate to eat, drink and otherwise enjoy the outdoors.

***While Stevens had been inside the [Defendant's] house on a couple of occasions as a guest, his tenancy in the travel trailer did not grant him general access to the interior of the house.***

8. ***When the police arrived following Defendant's 911 call, the Defendant had two cuts on his face that were bleeding. Paramedics cleaned the cuts, and the Defendant was advised he might need stitches. The Defendant informed the police that Stevens had caused the cuts.*** This was not the first act of violence perpetrated by Stevens upon the Defendant.

9. On or about December 7, 2016, ***about two weeks prior to the shooting, an incident occurred at the house where Stevens unexpectedly punched the Defendant, knocking him out cold.*** This was precipitated by Stevens extinguishing his cigarette in a bowl of chili offered to him by the Defendant, which caused the Defendant to curse at Stevens. Stevens then punched the Defendant, knocking him out for 2-3 minutes. This incident was witnessed by McElroy, and, to some extent, by McElroy's guest, Catherine Bell. Following the incident, McElroy asked Stevens to move out by the end of the year.

10. Robert Dosh, who was then a detective, responded to the scene of the shooting to investigate. This was the first homicide case he worked as the lead detective. Other than Moore and Stevens, no witnesses to the shooting were ever located. Several drops of blood were located by the doorway to the house, and a shotgun shell was located under a truck parked

close to the front porch of the house. (Upon their arrival, the police located the shotgun leaning up against the house near the front door. The shotgun was unloaded and the muzzle was pointing upward.) ***Stevens was lying within close proximity to the front porch. Dosh concluded that the Defendant was on his front porch when the shotgun was fired.***

11. The police obtained no information as to what occurred immediately prior to the shooting. The police have no information as to how long the Defendant was on the property prior to the shooting. The police have no information as to whether Stevens was moving toward the Defendant, or otherwise threatening him, prior to the shooting. The police have no information to refute that Stevens caused the cuts on Defendant's face, nor do the police have any information as to how the cuts were caused. The police developed no evidence that Defendant's use of deadly force was unlawful.

12. ***The Defendant told at least one deputy on scene that he acted in self-defense***. [Deputy] Dosh has testified that he has no evidence that the shooting did not occur in self-defense:

Q: Do you have any evidence that this shooting did not occur in self- defense?

A: No.

(Arthur Hearing, p.70, lines 13-15).

Dosh has further testified that he does not exclude the possibility that the shooting occurred in self-defense:

Q: [A]re you saying then that you don't exclude the possibility that this was self-defense?

6

A. I'm not excluding anything.

(Dosh deposition, p.107, lines 2-4).

13. Prior to making an arrest, Dosh conferred with ASA Val Winter. According to Dosh, he and ASA Winter did not discuss the possibility that the shooting was the result of lawful self-defense.

14. Stevens was larger and more physically capable than the Defendant. Stevens was 6'2" and weighed 210 lbs. (Medical Examiner's report, p.1.) The Defendant is 5'7" and weighs 195 lbs. Furthermore, the Defendant has had multiple back surgeries, the result of which is permanent rods and screws in his back and a 25% permanent impairment rating in his lumbar spine.

15. According to the toxicology report, Stevens' blood alcohol level was twice the legal limit (.16). Stevens also tested positive for cannabinoids in his urine, and cannabis was located in Stevens' trailer.

The motion was signed by Moore's attorney, but not by Moore. The motion was not sworn to by Moore, his counsel, or anyone else.[1] The State

---

[1] Our holding of legal insufficiency is not premised upon the fact that the motion to dismiss is not sworn to by someone with personal knowledge or supported by evidence or testimony establishing the facts in the motion to dismiss. We recently held that this failure does not by itself defeat such a motion. See Casanova v. State, 46 Fla. L. Weekly D2326, 2021 WL 4978408 (Fla. 3d DCA October 27, 2021); State v. Cassaday, 315 So. 3d 705 (Fla. 4th DCA 2021); Rogers v. State, 303 So. 3d 1266 (Fla. 5th DCA 2020); Jefferson v. State, 264 So. 3d 1019 (Fla. 2d DCA 2018).

7

objected and moved to strike the motion because it failed to contain sufficient allegations to meet the threshold requirement for raising a prima facie claim of immunity under section 776.032(4) (providing: "[O]nce a prima facie claim of self-defense immunity from criminal prosecution has been raised by the defendant at a pretrial immunity hearing, the burden of proof by clear and convincing evidence is on the party seeking to overcome the immunity from criminal prosecution provided in subsection (1).")  The trial court denied the State's motion to strike based on legal insufficiency and proceeded to an evidentiary hearing on the motion, ultimately granting Moore's motion and dismissing the charges.  This appeal follows.

## III.   DISCUSSION AND ANALYSIS

A determination of the legal sufficiency of a motion to dismiss is a question of law, which we review de novo.  Florida Bar v. Greene, 926 So. 2d 1195 (Fla. 2006); State v. Espinosa, 264 So. 3d 1055 (Fla. 3d DCA 2019). The first step in seeking dismissal based on self-defense immunity requires that "a prima facie claim of self-defense immunity from criminal prosecution has been raised by the defendant."  § 776.032(4), Fla. Stat.  Once a defendant has met this threshold, "the burden of proof by clear and convincing evidence is on the party seeking to overcome the immunity from criminal prosecution."  Id.  Our sister court in Jefferson v. State, 264 So. 3d

8

1019 (Fla. 2d DCA 2018), addressed the significance of the statutory phrase requiring a defendant to "raise" a "prima facie claim of self-defense immunity":

> Utilization of "raised," coupled with the aforementioned ordinary meaning of "prima facie claim," yields clear textual support that the legislature did not intend the person asserting Stand Your Ground immunity to first <u>prove</u> that prima facie claim of self-defense. Instead, the text indicates that the legislature intended that the person simply bring that yet to be disproven prima facie claim of self-defense to a pretrial immunity hearing for the trial judge to determine, at first glance, if all elements required to demonstrate the particular self-defense statute are present. This is confirmed by the legislature's refusal to prescribe an evidentiary "burden of proof" to the person asserting immunity in the Stand Your Ground statute.

<u>Id.</u> at 1027.

Nevertheless, and as our sister court noted in <u>Jefferson</u>, a defendant is still required to "allege a facially sufficient prima facie claim of justifiable use of force under chapter 776 in a motion to dismiss filed under rule 3.190(b) and present argument in support of that motion at a pretrial immunity hearing." <u>Id.</u> at 1028-29. <u>See also</u> <u>Langel v. State</u>, 255 So. 3d 359, 362 (Fla. 4th DCA 2018) ("To raise a 'prima facie claim of self-defense immunity from criminal prosecution' under section 776.032(4), a defendant must show that the elements for the justifiable use of force are met.")

Section 776.012(2), Florida Statutes (2016) ("Use or threatened use of force in defense of person") provides:

9

A person is justified in using or threatening to use deadly force if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony. A person who uses or threatens to use deadly force in accordance with this subsection does not have a duty to retreat and has the right to stand his or her ground if the person using or threatening to use the deadly force is not engaged in a criminal activity and is in a place where he or she has a right to be.

We find further guidance in Florida Standard Jury Instruction 3.6(f) on

Justifiable Use of Deadly Force, which provides in pertinent part:

The use of deadly force is justifiable if **defendant reasonably believed that the force was necessary to prevent imminent death or great bodily harm** to [himself] [herself] **while resisting**:

**another's attempt to murder [him]** [her], or

**any attempt to commit (applicable felony) upon [him]** [her], or

**any attempt to commit (applicable felony) upon or in any dwelling house in which [he] [she] was present.**

If defendant was not otherwise engaged in criminal activity and was in a place [he] [she] had a right to be, then [he] [she] had no duty to retreat and had the right to stand [his] [her] ground.

Fla Std. J. Instr. (Crim.) 3.6(f) (emphasis added).

Thus, to meet the statutory requirement of raising a "prima facie claim

of self-defense immunity" sufficient to shift the burden to the State, Moore's

motion had to allege specific facts that show or tend to show:

10

1) Moore used deadly force

2) Moore reasonably believed deadly force was necessary to prevent imminent death or great bodily harm to himself or another

3) Moore used such deadly force while resisting

    a) Stevens' attempt to murder him; or

    b) Stevens' attempt to commit a forcible felony upon him; or

    c) Stevens' attempt to commit a forcible felony upon or in Moore's dwelling.

4) Moore was not otherwise engaged in criminal activity and was in a place he had a right to be (and thus had no duty to retreat and had the right to stand his ground);

5) Stevens was in the process of unlawfully and forcefully entering Moore's dwelling, or had unlawfully and forcibly entered Moore's dwelling (thus creating a presumption that Moore had a reasonable fear of imminent peril of death or great bodily harm to himself when using deadly force)

We hold that Moore's motion failed to raise a prima facie claim of self-defense immunity, because it did not allege specific facts that show or tend to show that Moore used deadly force because he had a reasonable belief that such force was necessary to prevent imminent death or great bodily

harm to him; or that Moore used such deadly force while attempting to resist Stevens' attempt to murder Moore, or Stevens' attempt to commit a forcible felony on Moore, or Stevens' attempt to unlawfully and forcibly enter Moore's home. The motion does not allege that an altercation even occurred, much less how it occurred; who initiated it; what threats were actually made; whether and how any conduct by Stevens placed Moore in fear of imminent death or great bodily harm; or what forcible felony or other actions or conduct of Stevens led Moore to reasonably believe he had to resort to the use of deadly force.[2]

---

[2] Ironically, paragraph eleven of Moore's motion makes passing reference to the very type of information needed to raise a prima facie claim of self-defense immunity; however, this reference is made merely in the context of alleging that the police have no such information in its possession:

> The police obtained no information as to **what occurred immediately prior to the shooting**. The police have no information as to **how long the Defendant was on the property prior to the shooting**. The police have no information as to **whether Stevens was moving toward the Defendant, or otherwise threatening him, prior to the shooting.** The police have no information to refute **that Stevens caused the cuts on Defendant's face**, nor do the police have any information **as to how the cuts were caused**. The police developed no evidence that **Defendant's use of deadly force was unlawful**.

(Emphasis added). Such allegations do not represent an affirmative claim of self-defense, but rather a claim that the State or the police cannot **disprove** an assertion of self-defense immunity. While such an allegation or argument may be relevant at an evidentiary hearing, it does not serve to satisfy defendant's initial burden to allege specific facts which affirmatively

We further note it is insufficient to merely allege in conclusory fashion that Moore "acted in self-defense" or (even more attenuated in this case) that Moore "told at least one deputy that he acted in self-defense."[3]

And although Moore's **_Answer Brief_** states that "**just before the shooting** . . . Mr. Stevens . . . **attacked Mr. Moore, causing the injury to his eye**," Moore fails to provide any record cite to support the above statement. Indeed, Moore cannot provide such a record cite, for the fifteen numbered paragraphs in Moore's motion to dismiss do not include an allegation that, just before the shooting, Mr. Stevens attacked Mr. Moore, causing injury to his eye. In fact, the motion to dismiss does not even contain the words "just before the shooting," "attacked," "injury" or "eye."

We do not know from the allegations in the motion whether, for example, Moore shot Stevens because of some threat that was made, or because of cuts that were "caused by" Stevens. Nor do we know whether

---

show or tend to show the elements of a self-defense claim that entitle him to immunity.

[3] We note, but do not reach, the question of whether this type of attenuated allegation (merely repeating a statement previously made by a defendant to a third person) rather than an affirmative statement—"I acted in self-defense"—is legally sufficient. Is Moore simply alleging that he made this statement to at least one deputy, or is Moore adopting as true the content of the statement, i.e., "I acted in self-defense"? We do not reach this question because, even if framed as a positive statement in which Moore affirmatively asserts he acted in self-defense, it is a conclusory allegation that did not serve to satisfy his threshold pleading requirement.

13

the threat or the cuts led Moore to reasonably believe he had to resort to the use of deadly force upon Stevens. We do not know any of this because the motion fails to allege the necessary conduct, statements, sequence, timing, and other circumstances surrounding the relevant actions by Stevens (a threat allegedly made and two cuts allegedly "caused by" Stevens), and the relevant action by Moore (shooting Stevens in the abdomen with a shotgun).

IV. **CONCLUSION**

The allegations in Moore's motion were legally insufficient to raise "a prima facie claim of self-defense immunity from criminal prosecution" under section 776.032(4). In the absence of a legally sufficient motion, the statutory burden never shifted to the State to overcome the claim of self-defense immunity by clear and convincing evidence. The trial court erred in denying the State's motion to strike the motion to dismiss. No evidentiary hearing should have been held, and no ruling on the merits should have been made.[4]

We therefore reverse the trial court's order of dismissal and remand for reinstatement of the charges and for further proceedings consistent with this opinion.

---

[4] We express no opinion on whether defendant may file an amended or renewed motion on remand.

14